## MARY TORRANCE and LOUISA TORRANCE, vs. CHARLES TORRANCE and others.

A testator devised all his estate to his wife for life, with power to dispose of the same among all or such of his "children, or their issue, in such manner and proportion, and for such term and estate as she shall think fit," the shares designed for his "daughters to be secured to them for life," free from the control of their husbands, and after their decease, "for the benefit

of their children and their legal representatives, in equal proportions, for-ever." In pursuance of this power the wife, by will, disposed of the whole estate, dividing it into *eight parts*, giving one share in fee to each of the three sons, an equitable life estate in another to each of two married daughters, with remainder in fee to their children, and then devised one share to trus-tees, in trust, to permit each of the three unmarried daughters, during her natural life, to have, hold, &c., the same, and receive the rents, &c., thereof, free from the control of her husband, and without being liable for his debts, and "from and immediately after the decease of" each, "then in trust that the said share shall become the estate" of all her children, "to be equally divided amongst them;" and then provides, that "in the event of the de-cease of any of my aforesaid daughters without leaving any child or chil-dren, or descendants of such child or children," her or their share to be equally divided between all "my surviving children" and their respective representatives, as tenants in common. HELD:

1st. That the wife did not transcend her powers by this will, there being no limit upon the power as to the *quantity* and *quality* of the estate devised, except that the estate was to be disposed of among the testator's children, and their issue, and the shares of the daughters to be secured to them for life, free from the control of their husbands.

2nd. That the three unmarried daughters each took but a *life estate* in the share devised to them respectively by the will of their mother.

3rd. The expression "*dying without leaving any child or children, or descendants of such child or children,*" amounts to an indefinite failure of issue, and the limitation over on that event is too remote, and therefore void; *descendants* and *issue* in this instance mean the same.

4th. One of said daughters dying unmarried and without issue, the remainder over in her share being void, falls back to the estate of her father, the orig-inal testator, and descends as undisposed of property to his heirs at law.

5th. The nephew of the daughter so dying, takes his proportion of her share as heir directly of his grandfather, and not as heir of his father, the latter having died before the daughter, and never having been seized of any inter-est in her share.

APPEAL from the Equity Side of Baltimore county court.

Charles Torrance died in 1822, leaving a will duly executed to pass real estate, by which he devised to his wife, Elizabeth Torrance, during her natural life, the whole of his estate, real and personal, and then directed as follows: "And as to what shall become of it after her decease, I do hereby authorise and empower my said wife, Elizabeth, by deed, will, or otherwise, to give, grant, convey, devise or dispose of my said estate unto and among all or such of my children, or their issue, in

such manner and proportion, and for such term and estate as she shall think fit. Nevertheless it is my will, and I do order and direct, that the respective shares or portions designed for my daughters shall be secured to them for life, free and clear of any control of their respective husbands, or without being liable to the payment of their debts, and after their decease for the benefit of their children and their legal representatives, in equal proportions, forever; and in making the said disposition of my estate it is my wish, that my wife shall consult with my sons, Charles and George Torrance, or the survivor of them," and appointed his wife the sole executrix of his said will.

The testator left surviving him three sons, viz: Charles, George and John Torrance, and five daughters, viz: Elizabeth, wife of Alexander Mitchell, Ann, wife of Andrew Clopper, Dorcas, Mary and Louisa Torrance.

On the 3rd of March 1823, the widow, Elizabeth Torrance, executed her will, in which, after reciting her husband's will, as above set forth, she proceeds as follows: "Now I do hereby authorise and direct, that as soon as may be after my decease, the said estate, both real and personal, of my said late husband, Charles Torrance, as well as my own estate, of every description, shall be divided into eight equal parts, . . . . . . taking into view any sum or sums of money, or any other property in my books, that may be charged against my children, and charging them with the amount. As to the said several parts or shares I dispose thereof as follows:" She then gives one share to her sons, Charles and George, in trust for her daughter, Elizabeth Mitchell, wife of Alexander Mitchell; another share to her said sons, in trust for her daughter, Ann Clopper, wife of Andrew Clopper. Then follows this clause: "One other part or share thereof, I give and devise to my said sons, Charles Torrance and George Torrance, and the survivor of them, and the heirs, executors and administrators of such survivor, in trust, nevertheless, that they, or the survivor of them, or the heirs, executors or administrators of such survivor, do, and shall permit and suffer my daughter, Dorcas Torrance,

Torrance *vs.* Torrance, *et al.*

during her natural life, to have, hold, use, occupy, possess and enjoy the same, and the rents, issues, interest, dividends and income thereof, to take, receive and enjoy, without being subject to the control, power or disposal of any future husband she may have, or liable for his debts, contracts or engagements. And from and immediately after the decease of the said Dorcas, then, in trust, that the said share shall become the estate of all, and every the child or children she may have, and be equally divided between them, their heirs, executors, administrators and assigns, forever, as tenants in common, share and share alike. And in case any of her children shall die under age and without lawful issue, the part or portion of him, her or them, so dying, shall descend to, and become the estate of, the survivors or survivor of them, the said children." A share was given in trust for her daughter Mary, and a share for her daughter Louisa, precisely in the same way as the share of Dorcas. A share was given absolutely to Charles, one to George, and one to John Torrance. Then follows this clause: "Item.—In the event of the decease of any of my aforesaid daughters, without leaving any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her or them, so dying, shall descend to, and be equally divided between, all my surviving children and their respective representatives, as tenants in common, share and share alike. Nevertheless, I do hereby expressly order and direct, that the portions or parts that may thus descend to my surviving daughters, shall be held in trust for them respectively by my said sons, Charles Torrance and George Torrance, and the survivor of them, and the heirs, executors and administrators of such survivor, for the like uses and purposes, and subject to the same limitations and restrictions, and to descend to their respective children, in the like manner as the shares of estate hereinbefore devised for my daughters."

The widow died in 1829, and a division of the estate was made in pursuance of the directions of her will, and the share allotted to Dorcas consisted, amongst other things, of *one-*

*third* of what is called in the division lot No. 1, *one-half* of lot No. 5, and of lot No. 6. John Torrance died in 1832, leaving one son. Charles Torrance died the same year intestate and without issue. George Torrance died in November 1848, leaving a widow and four children. Mrs. Mitchell also died in the same month, leaving her husband and numerous children surviving her. Dorcas died on the 2nd of December 1848, intestate, without issue, and without having been married, leaving her three sisters, Mrs. Clopper Mary and Louisa Torrance, surviving her.

On the 24th of January 1849, Charles Torrance, of John, the son of John Torrance, deceased, filed the bill in this case for a sale of the real estate, which composed a part of the share of Dorcas Torrance, alleging, that it was incapable of partition, and as Mary Torrance holds the other moiety of lot No. 5, and Mary and Louisa Torrance each hold a third of lot No. 1, he prayed that the entirety of these lots might be sold. He claimed *one-sixth* of the share of Dorcas, and founds his title on the wills of said Charles Torrance and Elizabeth Torrance, (his grandfather and grandmother,) or as heir of said Dorcas, his aunt.

All parties in interest were made defendants, and admitted the facts and consented to a decree, except Mary and Louisa Torrance, who, in their answer, insist, that Dorcas had a fee-simple in said property, and that the same descended to her heirs at law, and that as two of the six heirs they are entitled, each, to one-sixth, being one-third of the whole; and whilst they admit that the several parcels are not capable separately of partition, they insist that her real estate, as a whole, is capable of partition, so as to give them their two parts in one or the other of the pieces of property, and they pray that this may be done. They ask that, at all events, the undivided interest of Dorcas may alone be sold, without subjecting their respective parts of lot No. 1, and the moiety of the defendant Mary in lot No. 5, to sale.

Testimony was then taken showing that the several parcels of property above mentioned belonged to said Charles Tor-

rance at the date of his will, and were owned by him in fee; that it could not be advantageously divided amongst the parties interested, and that it would be for their interest to sell.

The court below passed a decree for the sale of the property, accompanying which, LE GRAND, A. J., delivered the following opinion:

"The bill in this case is filed to procure a partition by sale of certain property mentioned in the proceedings. It is proved, and by the solicitor of the respondents admitted, that the property is incapable of partition except by sale. The principal facts in the case are as follows: Charles Torrance being seized of a large estate, made his last will and testament in 1822, and by it his estate was disposed of as follows:" (The will of Charles Torrance is here recited as above.) "In 1823, Elizabeth Torrance made her last will, which was admitted to probate in 1829. After reciting the will of her husband, Charles Torrance, she proceeds to dispose of the entire estate among her eight children, giving to her sons an absolute estate in fee-simple to such portions as she devises to them. The particular part of the estate now sought to be operated upon by the decree of this court, is that which was devised for her daughter Dorcas, recently deceased, without ever having been married. The parts of her will having reference to the share of Dorcas are as follows:" (The portions of her will, above set forth, are here recited.) "The complainant is the son of a deceased son of Charles and Elizabeth Torrance, and the defendants are two maiden daughters of the testators, and the children of their other children.

"The first question that presents itself is, what estate was created by the will of Charles Torrance? The language used by the testator is explicit and unambiguous. It confers on his wife a life estate in his entire estate and gives her a power of appointment, with authority to dispose of the estate among all "or such" of his children, or their issue, "*in such manner and proportion, and for such term and estate,*" as she might think fit, subject, nevertheless, to the limitation that any portion given to his daughters should be for *life*, "*and after their*

*decease for the benefit of their children and their legal representative, in equal proportions, forever.*" The proof shows, that Mrs. Torrance divided the estate into eight parts, giving one part to each of her children, the shares given to the sons absolutely and those to the daughters for life, with remainder over, as stated in the clause already copied from her will.

"It is manifest, that it was the intent of Charles Torrance that in no event should his daughters take more than a life estate, and, under the terms of his will, it was not within the power of his wife to give them a larger estate. This being so, it appears to the court that his wife Elizabeth did not exceed her power in limiting the estate of the daughters to their natural life. The only difficulty in the case arises out of the language used in the will of Mrs. Torrance, in regard to the shares of such of her daughters as shall die without children, or the descendants of children, the language being, "*the part or share of the estate hereinbefore devised to her or them,*" (daughter or daughters,) "shall descend to and be equally divided between *all my surviving children and their representatives,* as tenants in common." The will then goes on to provide, that the portion of any share which may so descend to any of her "surviving" daughters, shall be held in trust for the *like uses* and *purposes,* and *subject* to the same limitations and restrictions, and to descend to their respective children in like manner as the share before devised to her daughters.

"In regard to the interpretation of the word "*survivor,*" there has been and still is great contrariety of opinion. To use the language of a learned writer, "the state of the authorities seems hardly to justify the hope that litigation has reached its limits on this often occurring point." It is not deemed necessary to recur to the cases in which the questions has occurred. The principal decisions will be found collected in 2 *Jarman on Wills,* 735. An examination of them will justify, I think, the opinion that the liberal construction which had obtained, has been shaken, if not overruled, by subsequent cases, that is, in all cases where there is no explanatory context. A liberal construction of the words "surviving chil-

3     v.4

dren" in the will of Elizabeth Torrance, would give to them an estate in fee, and demand of the court a dismissal of the bill, as in such case the complainant would be without such interest as is necessary to give him a standing in court. When this case was argued, I inclined to the opinion that such would necessarily be the decision of the court, but subsequent reflection and examination have induced the conviction that such construction would be erroneous. It would render the words "*and representatives*" wholly ineffective, and violate the manifest intention of the testator Charles, for it must be obvious it was his purpose that his daughters, in no event, should receive more than a life estate. Besides, if the estate of each daughter dying without issue devolves her estate on the survivor, when all shall have died there would be none to take, and this would be the case when the two daughters now living shall have died. Looking, therefore, to the purpose of both testators as manifested throughout their wills, the clause must be interpreted so as to read as if written, "all my surviving children, and the representatives of my deceased children." Where the purpose of the testator is clear and not in conflict with any principle of law, courts will give it effect so that equity may be done. 2 *H. & G.*, 130. 4 *G. & J.*, 328. 5 *G. & J.*, 459. *Ibid.*, 159. That courts will insert words necessary to effectuate the intention of a testator, is established by the cases. 7 *H. & J.*, 221, and 2 *H. & G.*, 42. If these views be correct, a decree must be given in conformity with the prayer of the bill. On the whole the court is of opinion, that the surviving daughters take but a life estate in the share of their sister Dorcas, and that the complainant, as representative of his father, takes his share as tenant in fee."

From this decree the defendants, Mary and Louisa Torrance, appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Wm. Schley* for the appellants.

1st. The disposition by Elizabeth Torrance of the estate of

Charles Torrance, took effect only as an *appointment* of *his* estate amongst his children. 2 *Crabb on Real Property, secs.* 2028, 2029, (55 *Law Lib.*, 478.) 16 *Law Lib.*, 16, 17. 2 *Sugden on Powers*, 26. 2 *Ves., Jr.*, 70. Hence it follows, that if she *exceeded* her power, the appointment is only good as far as within the power, and is void for the excess. 2 *Sugden on Powers*, 90. 16 *Law Lib.*, 51. 5 *Simmons*, 632. (7 *Eng. Ch. Rep.*, 562, *Sadler vs. Pratt.*) 2 *Ves., Jr.*, 336, *Bristow vs. Warde, note (a.)* 1 *Ves., Jr.*, 310, *note.* 2 *Ves., Jr.*, 640.

2nd. When, therefore, Mrs. Torrance appointed *one-eighth* of the estate to Dorcas, and imposed on that share the limitations and restrictions directed by her husband, and *in the very words of her husband's will*, she had fully exercised the power. If there had been no appointment, the property would have descended to the heirs of Charles Torrance. He never said what should become of his estate in case his daughters should die without issue, and gave no power of appointment in such case to his wife. All that portion of her will, therefore, commencing at the word "*item*," is *ultra* the power and merely void.

3rd. Hence Dorcas, by appointment of her mother, took *one-eighth* of her *father's* estate under her *father's* will, that is to say the *quantity* and *quality* of her estate in her said share, is to be decided by the intention in that respect of her father's will.

4th. Under the will of her father, Dorcas took by construction a fee-simple. He designed the children of the daughters should take *through* their mothers. He does not say that his daughters shall take only a life estate, but he says that the part designed for his daughters shall be so secured to them for life, as to prevent the control of their husbands over it, and after their decease for the benefit of their *children*. The word children may be as well a word of *limitation* as of *purchase.* 12 *G. & J.*, 83, 86, 107. He meant the children to take through the mother as the representative of the mother—the words are, "*shall be secured to them;*" that is, the whole estate,

and so secured as to pass for the benefit of the children—pass by descent as the mother's property. Why secure the share to the children if the daughter was to have but a life estate? The *corpus* or substance of the estate, and not its mere quality, was to be secured to the mother.

But the mother also meant by her will that the daughters should take an estate in fee, for she provides for the estate to *descend.* When lands are devised to one and his children, and he has no children at the time the devise was made, the devisee takes an estate tail. 2 *Powell on Devises,* 494, (22 *Law Lib.,* 264.) Here Dorcas was unmarried when the mother made her will. She gives the estate to the daughter for and during her natural life, and after her death to her children. The meaning is that the estate should vest in the mother, and the children should take from her. The rule in *Shelley's case* stands on the same ground. The word *"issue"* is sometimes doubtful—it may be a word of limitation or of purchase—so with *"children."* If they are to take an estate descendible or through the first taker, it is a word of limitation, and the first taker takes an estate sufficiently large to enable the children to take an estate by descent. A devise for life may, by subsequent words, be enlarged to an estate tail. 2 *Crabb on Real Property,* secs. 983, 985, 55 *Law Lib.,* 23, 25. The whole will shows that the daughters were to take descendible estates.

The limitation over after the death of the daughter, "without leaving any child or children," is too remote, being after an indefinite failure of issue. 7 *H. & J.,* 236, 247, *Dallam vs. Dallam.* 1 *H. & G.,* 123, 125, 126, *Newton vs. Griffith.* 3 *G. & J.,* 207, 209, 212. 6 *G. & J.,* 235, 236, *Biscoe vs. Biscoe.*

5th. But if, upon the true construction of her father's will, the estate of Dorcas is properly to be considered as an estate in her for life, with a contingent remainder in fee to her children, then, in the event that has happened of her dying without issue, and the consequent failure of the limitation in remainder to take effect, the reversion has descended upon

the heirs at law of *Charles Torrance;* and the appellants are respectively entitled, each, to *one-sixth* part thereof; and the complainant below, upon amending his bill and claiming, through his father, as one of the heirs at law of said Charles Torrance, his grandfather, and claiming also as one of the heirs at law of Charles Torrance, his uncle, will be entitled, as owner of *one-sixth* thereof, to maintain his bill for a partition or sale of said property.

The preceding points are based on the notion that so much of the will of Elizabeth Torrance, as is specified in the second point, is an excess of power, and inoperative and void. But if the court should hold otherwise, and deem the same a valid and effectual exercise of the power conferred upon her by her husband's will, then—

6th. The effect in law of said item, is to convert the estate, antecedently given to Dorcas by her mother's will, (whether that antecedent estate was an estate in fee or an estate for life,) into an estate in fee-tail general; and which in Maryland is an estate in fee-simple.

7th. But if this be wrong, and the quantity of estate given to Dorcas was but an estate for her life, and the limitation over, after a limitation in fee to her children, be good by way of executory devise, then the limitation over being to "all my *surviving children* and their respective representatives as tenants in common," is exclusive of the complainant, who is not a child (but a grand-child,) of Elizabeth Torrance, and whose father, John Torrance, died long before Dorcas. The share of Dorcas, upon this construction, would be divisible between the three surviving daughters, Mrs. Clopper, Mary Torrance and Louisa Torrance, subject to the trusts imposed on the shares of the daughters by the mother's will. The words "*their representatives,*" refers to the surviving children. The word "*children*" here does not mean *grand-children.* 16 *Law Lib.*, 148. 2 *Sugden on Powers*, 272. 13 *Eng. Ch. Rep.*, 48. 2 *Russel and Mylne*, 301, *Carver vs. Bowles.* 1 *Edward's Ch. Rep.*, 174. 8 *Paige*, 378. The complainant, therefore, upon this construction, has no title to maintain his bill.

*T. P. Scott* for the appellee.

1st. The power given by Charles Torrance, in and by his will, to Elizabeth Torrance, his wife, is unlimited except in two particulars, viz., the estate shall not be given away from his own blood; and his daughters shall be limited to a life estate for their separate use. 4 *Kent's Com.*, 346.

2nd. Dorcas Torrance did not take an estate of inheritance, but only a life estate. 9 *Gill*, 432, 436, *Chelton vs. Henderson and Wife.*

3rd. In the will of Mrs. Torrance, the limitation over, upon the death of Dorcas without leaving descendants, unto "all my surviving children and their respective representatives," lets in the complainant below, Charles Torrance of John, as the representative of his father, to a participation of Dorcas' share of the estate:—1st. Because an intention to disinherit the heirs is not to be presumed. 2nd. Because the intention to admit him is clear from an examination of the whole will. 5 *Gill*, 226, 227, *Swope's Will.* 1 *Md. Rep.*, 169. 2 *Md. Rep.*, 88. 3rd. Because by any other construction, the word "representatives" could have no force or effect: but effect must be given to *every* word, if practicable, and in conformity with the general intent. 4th. Because by any other construction the share might be left undisposed of. 5th. Because to effectuate the intention, the court will strike out and insert words in a will; and in this case the court will read the clause in question as if it ran thus, viz., "all of my *other* children *or* their representatives," or, "all of my surviving children and the representatives of my deceased children." 18 *Eng. Ch. Rep.*, 240. 7 *H. & J.*, 221, *Dallam vs. Dallam.* 2 *H. & G.*, 42, *Raborg vs. Hammond.* 7 *G. & J.*, 227, 248, 251, *Cresswell vs. Lawson.* 17 *Ves.*, 482, *Barlow vs. Salter.* 2 *Ves.*, *Jr.*, 336. 7 *Gill*, 202, *Janney vs. Sprigg.*

4th. When such appears to have been the intention of the testator, grand-children are embraced under the term children. 4 *Ves.*, 437, *Royle vs. Hamilton.* 4 *Kent's Com.*, 345. 1 *Desaussure*, 499, *Deveaux vs. Barnwell.* 5 *Term Rep.*, 427, 431, *Doe vs. Wainewright.*

MASON, J., delivered the opinion of this court.

Charles Torrance devised to his wife, Elizabeth Torrance, for her natural life, the whole of his estate, both real and personal. He then confers upon her the power to dispose of the estate, with two restrictions attached. In the first place, she is required to dispose of the estate "among all or such of my children or their issue, in such manner and proportion, and for such time and estate, as she shall think fit." The second restriction or condition requires, "that the respective shares or portions, designed for my daughters, shall be secured to them for life, free and clear of any control of their respective husbands, or without being liable to the payment of their debts, and after their decease for the benefit of their children, and their legal representatives, in equal proportions forever."

Subsequently, Mrs. Elizabeth Torrance, in supposed pursuance of the power delegated to her by her husband, made her will disposing of the whole estate. The first question which arises is, were the bequests under Mrs. Torrance's will made in accordance with the power conferred upon her, by her husband; and secondly, if they were, what are the nature and effect of those bequests?

This court is of opinion that the testatrix did not transcend her powers, in the will which is now before us. As directed by her husband, she disposed of the estate *among his children and their issue,* and also directs that *the several interests designed for his daughters should be held as separate estates free from the control or dominion of their husbands.* We cannot discover that any limit was placed upon the power, as relates to the *quantity and quality* of the estate to be devised, further than those already enumerated.

We are next to consider what interest did the several devisees take under Mrs. Torrance's will?

Her three sons, Charles, George and John Torrance, each took one-eighth part of the estate in fee-simple. There is no dispute upon this point. Nor is there any question in regard to the interest taken by Mrs. Clopper and Mrs. Mitchell.

Each took an equitable life estate, with remainder in fee to their children.

The present controversy grows out of the proper construction to be given to the clauses of the will which relate to the devises to the three daughters, Mary, Louisa and Dorcas Torrance, and especially that clause which relates to their *dying without children, &c.*

Those three, we are of opinion, took each but a *life estate* under the will. Whether this life estate was created by the mother by virtue of the general power conferred upon her, in her husband's will, *that she might dispose of the estate in such manner and proportion, and for such term and estate, as she shall think fit ;* or whether it was taken in pursuance of the direction or condition imposed by the husband, *that the respective shares or portions designed for my daughters shall be secured to them for life,* it is immaterial for us to inquire at present. The result would be the same. The case of *Chelton vs. Henderson's Lessee,* 9 *Gill,* 432, we think conclusively determines the construction which we have placed upon Mrs. Torrance's will to be the proper one. See, also, the case of *Ware, and Others, vs. Richardson,* decided at the present term. (3 *Md. Rep.,* 505.)

Dorcas, one of the daughters, has since died, without having left issue, or been married; and the next question to be determined is, what is the legal effect of the following clause of the will of her mother upon her interest? That clause is in these words, viz : "Item.—In the event of the decease of any of my aforesaid daughters, without leaving any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her or them, so dying, shall descend to, and be equally divided between all my surviving children, and their respective representatives, as tenants in common, share and share alike." The above clause is to be construed in connection with the previous clause, wherein the life estate is created in Dorcas, and where, after her death, the fee is conferred upon her children, in the following words, to wit: "and from and after the de-

cease of the said Dorcas, then, in trust that the said share shall become the estate of all and every the child and children she may have, their heirs," &c.

Under the authority of *Griffith vs. Newton*, 1 *Harr. and Gill*, 111, and indeed of all the leading and well adjudicated cases upon the subject, both in England and in this country, we think, that the expression, *dying without leaving any child or children, or descendants of such child or children*, amounts to an indefinite failure of issue, and that the limitation over, being too remote, is consequently void. *Descendants* and *issue*, in this instance, mean the same. The devise in the present will, it will be seen, can only take effect over, at the period when the issue or descendants of the first taker, shall become extinct, and when there are no longer any descendants of the issue, or children of the grantee, without any reference to any particular time, or any particular event. An executory devise upon such an indefinite failure of issue, upon principle, is clearly void, because it might tie up property for endless generations.

In the case of *Tenny vs. Agar*, 12 *East.*, 253, the devise was to the son and daughter in fee, but if they should happen to die without having *any child or issue lawfully begotten*, then remainder over. Upon this clause of the will Lord Ellenborough held, that nothing could be clearer than that the remainder-man was not intended by the testator to take any thing until the issue of the son and daughter were all extinct, and the remainder over, was consequently held void and inoperative. *Issue* in that case was a term clearly not more comprehensive than *descendants* is, in this. There are numerous authorities sustaining these general propositions, and to those already cited we would add, *King vs. Rumball*, Cro. Jac., 448. *Holmes vs. Meynel*, T. Raym., 452. *Denn vs. Slater*, 5 *Term Rep.*, 335. *Doe vs. Ellis*, 9 *East.*, 382. *Barlow vs. Salter*, 17 *Ves.*, 479. *Dallam vs. Dallam*, 7 *Har. and John.*, 220. *Bells vs. Gillespie*, 5 *Rand.*, 273. *Ide vs. Ide*, 5 *Mass.*, 500. *Irwin vs. Dunwoody*, 17 *Serg. and Rawle*, 61.

The estate, therefore, in which Dorcas had an interest, the

remainder over being void, falls back to the estate of the original testator, Charles Torrance, and descends as undisposed of property, to his heirs at law.

The father of the complainant being dead at the time Dorcas died, the complainant takes one-sixth of the property in which Dorcas had a life estate, as heir directly of his grandfather, and not as heir of his father, who never was seized of any interest in her share of the estate. Neither was his uncle, Charles, ever seized of any interest in Dorcas' share, which could descend to the complainant, the uncle having also died intestate and without children, before Dorcas.

We are also of opinion, that the averments in the bill, and the proof, are sufficient to warrant the sale and the relief prayed for, and that therefore the decree below must be affirmed

We remand the cause with instructions to distribute the fund arising from the sale when brought into court, in accord-with the principles announced in this opinion.

*Decree affirmed and cause remanded, costs in both courts to be paid out of the proceeds of sale.*