ELEANOR F. TORRANCE CONNER, Executrix of LOUISA TORRANCE *vs.* RACHEL WARING, and others.

*Testamentary construction—Life estate—Right conferred to dispose of the Remainder—Execution of a Power—Party taking under the Power, takes under the Donor of the Power—Estate limited to Trustees—Devise in execution of a Power to Trustees—Legal fee Vested in Trustees and the heirs of the Survivor—Determinable fee—Estate vested, by way of Reverter, in the Heirs-at-Law of the original Donor of a Power—Parties entitled to claim an Estate becoming vested by way of Reverter—Distribution of a Trust Fund.*

C. T. devised all his estate to E. T., his wife, for life, with power to dispose of the same among all or such of his " children, or their issue, in such manner and proportion, and for such term and estate as she shall think fit," the shares designed for his daughters to " be secured to them for life, free and clear of any control of their respective husbands, or without being liable to the payment of their debts, and after their decease, for the benefit of their children, and their legal representatives, in equal proportions, forever." In pursuance of this power, E. T., the wife, by will, disposed of the whole estate, dividing it into eight equal parts, giving one share in fee to each of the three sons, one share to trustees, in trust for each of two married daughters, and then devised one share to trustees, in trust, to permit each of the three unmarried daughters, during her natural life, to have, hold, &c., the same, and receive the rents, &c., thereof, free from the control of any future husband, and without being liable for his debts; " and from and immediately after the decease

Conner, Ex'rx *vs.* Waring, *et al.*

·of " each, " then, *in trust,* that the said share shall become the estate ·of all" her children, to " be equally divided between them, their heirs," &c., " forever, as tenants in common, share and share alike;" .and then provided that " in the event of the decease of any of her aforesaid daughters, without leaving any child or children, or ·descendants of such child or children," her or their share should ·" descend to, and be equally divided between, all " her " surviving ·children, and their respective representatives, as tenants in common, ·share and share alike." A son and three daughters, died unmarried .and without issue; two sons and two daughters died, each leaving issue. A certain fund raised from real estate devised by C. T. and E. T., his wife, had been held in trust for L. an unmarried daughter, to ·whom the interest or income therefrom had been paid during her life. L. died leaving a will, whereby she devised and bequeathed the whole of her estate, save a small pecuniary legacy, to the children of a deceased brother. Upon a question as to the proper mode of distributing the fund which had been held in trust for L. it was HELD:

1st. That the devise by C. T. to his wife E. T. was for her life only; but by the power in his will he clothed her with authority to dispose of the remainder of the estate among all or such of his children, or their issue, in such manner and proportions, and for such term and estate as she might think fit.

2nd. That until this power was exercised, the reversion in the fee remained in the heirs-at-law of the testator; but when the power was executed, by the will of the wife, the estates created thereby, took effect in the same manner as if they had been created by the will which raised the power.

3rd. That the party taking under and by execution of the power, took under the donor, and in like manner as if the power, and the instrument executing it, had been incorporated in one instrument.

4th. That consequently, the estate created by the execution of the power, in trust, for the life of the daughter L., with remainder in fee to her unborn children, would, but for the estate limited to the trustees, have left the reversion in the heirs-at-law, of the donor of the power, dependent upon the event of L. having issue.

5th. That the devise by the mother in execution of the power, to two trustees and the survivor of them, and the heirs of the survivor, in trust, &c., for L., the daughter, taken in connection with other portions of the will as manifesting the intent, clearly vested the legal fee in the trustees and the heirs of the survivor; but it was

a determinable fee, and, consequently as soon as the death of the equitable life tenant occurred, without having had issue to take the remainder, that event defeated and determined the estate in law conferred upon the trustees, and it became thence vested, by way of reverter, in the heirs-at-law of the original donor of the power.

6th. That this estate thus becoming vested by way of reverter, could only be claimed by those who could, at the time of such reverter, show themselves to be heirs of the original donor of the power; the intermediate heirs of such donor not having been so seized as to render them new stocks of inheritance.

7th. That the fund in controversy must be distributed into four equal parts, according to the contention of the appellees, and not into six as contended by the appellant, that is, one-fourth part should be paid to the heir or heirs of each of the two sons and two daughters who died leaving issue.

APPEAL from the Superior Court of Baltimore City.

Charles Torrance died in 1822, leaving a will duly executed to pass real estate, by which he devised to his wife, Elizabeth Torrance, during her natural life, the whole of his estate, real and personal, and then directed as follows: "And as to what shall become of it after her decease, I do hereby authorize and empower my said wife, Elizabeth, by deed, will or otherwise, to give, grant, convey, devise or dispose of my said estate unto and among all or such of my children, or their issue, in such manner and proportion, and for such term and estate as she shall think fit. Nevertheless it is my will, and I do order and direct, that the respective shares or portions designed for my daughters shall be secured to them for life, free and clear of any control of their respective husbands, or without being liable to the payment of their debts, and after their decease, for the benefit of their children and their legal representatives, in equal proportions, forever." The testator appointed his wife the sole executrix of his said will. He left surviving him three sons, viz., Charles, George

and John Torrance, and five daughters, viz., Elizabeth, wife of Alexander Mitchell, Ann, wife of Andrew Clopper, Dorcas, Mary and Louisa Torrance. On the 30th of March, 1823, the widow, Elizabeth Torrance, executed her will, which, after reciting her husband's will, as above set forth, proceeded as follows: "Now I do hereby authorize and direct, that as soon as may be after my decease, the said estate, both real and personal, of my said late husband, Charles Torrance, as well as my own estate, of every description, shall be divided into eight equal parts, * * * * taking into view any sum or sums of money, or any other property in my books, that may be charged against my children, and charging them with the amount. As to the said several parts or shares I dispose thereof as follows." She then gave one share to her sons, Charles and George, in trust for her daughter, Elizabeth Mitchell, wife of Alexander Mitchell; another share to her said sons, in trust for her daughter, Ann Clopper, wife of Andrew Clopper. Then followed three separate clauses in respect to the three unmarried daughters, in exactly the same terms; the one in respect to Louisa Torrance is set out in full in the opinion of this Court. A share was given absolutely to Charles, one to George, and one to John Torrance. Then followed this clause: "Item.—In the event of the decease of any of my aforesaid daughters, without having any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her, or them, so dying, shall descend to, and be equally divided between all my surviving children and their respective representatives, as tenants in common, share and share alike. Nevertheless, I do hereby expressly order and direct, that the portions or parts that may thus descend to my surviving daughters, shall be held in trust for them respectively, by my said sons, Charles Torrance and George Torrance, and the survivor of them, and the heirs, executors and administrators of

such survivor, for the like uses and purposes, and subject to the same limitations and restrictions, and to descend to their respective children, in the like manner as the shares of the estate hereinbefore devised for my daughters." The widow died in 1829, and a division of the estate was made in pursuance of the directions of her will. John Torrance died in 1832, intestate, leaving one son. Charles Torrance died the same year intestate, and without issue. George Torrance died in November, 1848, leaving a widow and four children. Mrs. Mitchell also died in the same month, leaving her husband and numerous children surviving her. Dorcas died on the 2nd of December, 1848, intestate, without issue, and without having been married. (*Vide Torrance vs. Torrance, et al.,* 4 *Md.,* 11.) Mrs. Clopper died in ⸳⸳⸳⸳ leaving children surviving her. Mary Torrance died in 1865, unmarried, leaving a will whereby she devised her entire estate, absolutely to her sister, Louisa Torrance. Louisa Torrance died in 1878, unmarried, leaving a will, whereby she devised and bequeathed all her right and estate, save a small pecuniary legacy, to her three nieces, children of her deceased brother George.

In June, 1878, a petition was filed in the case of *Torrance vs. Torrance, et al.,* by Eleanor F. Torrance Conner, as the executrix of Louisa Torrance, deceased, and James A. Conner, her husband, which alleged that under orders of the Court theretofore passed in said case, William H. Collins and George Hawkins Williams, as surviving trustees, had held as an investment of the funds of the above cause $10,014.42, of Baltimore City six per cent. loan, for the use of Louisa Torrance for her life, with remainder to the parties entitled under the will of Charles Torrance the elder, deceased, and of his widow, Elizabeth Torrance, deceased, as construed and settled by the Court of Appeals in 4 *Md.,* 11. The petition charged that Louisa Torrance had recently deceased, unmarried and

without issue, whereby the said remainder had become vested, and should be distributed as follows: One-sixth part thereof to Charles Torrance, of John, the complainant, one-sixth part to your petitioner, as executrix, as the part of Mary Torrance, deceased, who devised the same by her last will to the said Louisa, and of which will the said Louisa was sole executrix; one-sixth part thereof to your petitioner, as executrix of said Louisa, who was assignee of the share of the children of George Torrance, deceased, his sole heirs-at-law; one other sixth part to your petitioner as executrix, being the part which said Louisa held in her own right; one other sixth part to the children of Elizabeth Mitchell, deceased, or their representatives; and the remaining one-sixth to the children of Ann Clopper, deceased, or their representatives. To this petition an answer was filed by Rachel Waring, Ann Clopper, Amelia Clopper, and the trustee of Mrs. Mary Clopper, wife of Charles T. Clopper. This answer charged that the method of distribution suggested in the petition, was entirely erroneous, and averred that the property should be distributed in the following manner: One-fourth to Charles Torrance, the complainant; one-fourth to the heirs of George Torrance; one-fourth to the heirs of Mrs. Mitchell; and one-fourth to the heirs of Mrs. Clopper; and that as between the respondents themselves, Rachel Waring was entitled to one-fifth of one-fourth of said property; Ann Clopper to one-fifth of one-fourth; Amelia Clopper to one-fifth of one-fourth; the trustee of Mrs. Mary Clopper, wife of Charles T. Clopper, to one-fifth of one-fourth, and that the remaining one-fifth of one-fourth belonged to Mrs. Ann Cleves Wilkins, daughter of Mrs. Pleasants, deceased.

The Court, (DOBBIN J.,) passed an order on the 13th of November, 1878, directing the sale of the investment of $10,014.42 of Baltimore City six per cent. stock, and the division of the proceeds of the sale into four equal parts,

whereof one-fourth part should be paid to Charles Tor-
rance, one-fourth part to the heirs of George Torrance,
one-fourth part to the heirs of Mrs. Mitchell, and the
remaining fourth part to the heirs of Mrs. Clopper. From
this order the present appeal was taken.

The cause was argued before BARTOL, C. J. MILLER,
ALVEY and IRVING, J.

*George Hawkins Williams*, for the appellant.

*Edgar H. Gans* and *Bradley T. Johnson*, for the ap-
pellees.

ALVEY, J., delivered the opinion of the Court

The only question presented on this appeal is, what is
the proper mode of distribution of a certain fund, now in
the hands of trustees, raised from real estate devised by
the wills of Charles Torrance, and Elizabeth Torrance,
his widow, and which had been held in trust for Louisa
Torrance, late deceased, one of the children and devisees
of the said Charles and Elizabeth.

The wills of both the father and the mother were con-
strued by the Court of Appeals, in the case of *Torrance
vs. Torrance, et al.*, 4 *Md.*, 11; and while it is contended
on both sides that the decision in that case has settled the
principle that must determine the question raised in this,
it is not agreed as to the true interpretation of that deci-
sion; and hence the controversy in this case.

In the case in 4 *Md.*, 11, the controversy was in regard
to the distribution of the share or proportion of the estate
held in trust for Dorcas, one of the daughters, for life,
who had died without child or children to take the re-
mainder over; and here the controversy is in regard to
the share of the estate held in trust for Louisa for life,
who has also died without children to take the remainder
under the devise.

The three separate clauses in the mother's will, in execution of the power contained in the will of the father, in respect to the three unmarried daughters, Dorcas, Mary and Louisa, are in exactly the same terms, and with exactly the same limitations, the one as the others; and that in respect to Louisa is as follows: " One other part or share thereof, I give and devise to my said sons, Charles Torrance and George Torrance, and the survivor of them, and the heirs, executors and administrators of such survivor, *in trust*; nevertheless, that they, or the survivor of them, or the heirs, executors or administrators of such survivor, do, and shall permit and suffer my daughter, Louisa Torrance, during her natural life, to have, hold, use, occupy, possess and enjoy the same, and the rents, issues, interest, dividends and income thereof, to take, receive and enjoy, without being subject to the control, power or disposal of any future husband she may have, or liable for his debts, contracts or engagements. And from and immediately after the decease of the said Louisa, then, *in trust,* that the said share shall become the estate of all, and every the child or children she may have, and be equally divided between them, their heirs, executors, administrators and assigns, forever, as tenants in common, share and share alike. And in case any of her children shall die under age and without lawful issue, the part or portion of him, her or them, so dying, shall descend to, and become the estate of the survivors or survivor of them, the said children."

At the time of the decision of the former case, reported in 4 *Md.*, 11, of the eight children living at the death of the mother, in 1829, three only were living. Charles and Dorcas had died intestate and without issue; John, George and Mrs. Mitchell, had died leaving children; and Mrs. Clopper who was married and had children, and Mary and Louisa, who were unmarried, were the survivors. Since then Mrs. Clopper has died leaving children surviving

her; Mary has died childless, devising all her property and estate to Louisa, and the latter has recently died, devising all her right and estate to the children of her deceased brother, George.

The Court of Appeals in the former case having said, that inasmuch as Dorcas had died without issue, and the remainder over, in default of issue, in that share was void, and therefore such share or part of the estate fell back to the estate of her father, the original testator, and descended as undisposed of property to his heirs-at-law, the appellant in this case contends, that upon the same construction, the share limited to Louisa for life, upon her death without issue, fell back into the estate of the original testator, and descends to his heirs-at-law, in the same manner; and as the share limited to Dorcas for life was distributed into six parts, so must be the share falling back and descending on the death of Louisa. On the other hand, the appellees contend, that the share in which Louisa had an equitable life estate, should be divided into four parts only; that is to say, one part to Charles Torrance, son of John; another part to the heirs of George; another to the heirs of Mrs. Mitchell, and another to the heirs of Mrs. Clopper; making the death of Louisa the point of time when to ascertain the heirs of the original testator who are entitled to take, upon default of issue to take the remainder over.

The devise by Charles Torrance, the elder, to his wife was for her life only; but by the power in his will he clothed this life tenant with authority to dispose of the remainder of the estate among all or such of his children, or their issue, in such manner and proportion, and for such term and estate, as she might think fit. Until this power was exercised, the reversion in the fee remained in the heirs-at-law of the testator. But when the power was executed, by the will of the wife, the estates created thereby, took effect in the same manner as if they had

been created by the will which raised the power. The party taking under and by execution of the power, took under the donor and in like manner as if the power, and the instrument executing it, had been incorporated in one instrument. *Co. Litt.*, 113, *a; Bradish vs. Gibbs*, 3 *John. Ch.*, 550; 4 *Kent Com.*, 337. This being so, the estate created by the execution of the power, in trust, for the life of the daughter Louisa, with remainder in fee to her unborn children, would, but for the estate limited to the trustees, have left the reversion in the heirs-at-law of the donor of the power, dependent upon the event of Louisa having issue. This was a limitation of a contingent remainder to future children, and until the remainder became vested, if the fee had not been placed in trustees, it would have remained in the heirs-at-law of the original testator. In such case, on the facts disclosed, there would have been good ground for the contention on the part of the appellant. For while it is an old and well established principle of the common law, in nowise affected by our statute regulating the course of descents, that the heir on whom the reversion is cast, subject to the life estate, is not so seized as to constitute him the *possessio fratris* or *stirps* of descent, if he died during the existence of the life estate, and that the person claiming as heir must claim from a previous ancestor last actually seized of the inheritance (*Co. Litt.*, 14 *a; Ratcliff's Case*, 3 *Co.*, 42; *Kellow vs. Rowden, Carth.*, 126; 2 *Com. Dig., tit.* 29, *ch.* 4, *secs.* 1, 2, 3 *and* 4; *Jackson vs. Hilton*, 16 *John.*, 96; 4 *Kent Com.*, 385, 6); yet, while the estate is thus in expectancy, the intermediate heir, in whom the reversion may vest, may do acts, which the law deems equivalent to an actual seisin, and which will change the course of the descent, and make a new root of inheritance. Thus, he may by exercising acts of ownership over it, as by granting it for life, or in tail; or by devising it, or changing it, appropriate it to himself, and by that means change the course of descent.

*Co. Litt.*, 15 *a; Stringer vs. New*, 9 *Mod.*, 363 ; 2 *Com. Dig.*, *tit.* 29, *ch.* 4, *secs.* 7, 8 *and* 9 ; *Cook vs. Hammond*, 4 *Mason*, *C. C. Rep.*, 485.   Hence the devises of Mary and Louisa, embracing their interests in the reversion, as heirs of their father, would constitute them new stocks of inheritance in respect to such reversion; nor would it at all have varied the legal result as to the devise by Louisa, that she happened to be the devisee for life, upon the termination of whose particular estate the reversion fell into possession.   See *Barnitz vs. Casey*, 7 *Cr.*, 170.

But this legal result, and for which the appellant contends, has been altogether defeated by the interposition of trustees to take the legal estate, instead of devolving it directly on the parties to take the beneficial estates under the power.   As we have seen, the devise by the mother in execution of the power, was to two trustees and the survivor of them, and the *heirs* of the survivor, *in trust*, &c., to permit the daughter during her life, to have and to hold, &c., and to receive the rents and profits thereof, free from the control of her husband, &c.; and from and immediately after the decease of the daughter, " then, *in trust*, that the said share shall become the estate " of all her children, to be equally divided amongst them.   This devise, when taken in connection with other portions of the will as manifesting the intent, clearly vested the legal fee in the trustees and the heirs of the survivor ; but it was a determinable fee, and, consequently, as soon as the death of the equitable life tenant occurred, without having had issue to take the remainder, that event defeated and determined the estate in law conferred upon the trustees, and it became thence vested, by way of reverter, in the heirs-at-law of the original donor of the power. *Brownsword vs. Edwards*, 2 *Ves.*, 243 ; *Horton vs. Horton*, 7 *D. & East*, 652 ; *Shelley vs. Edlin*, 4 *Ad. & El.*, 582, 589. This estate thus becoming vested by way of reverter, can only be claimed by those who could, at the time of such

Conner, Ex'rx *vs.* Waring, *et al.*

reverter, show themselves to be heirs of the original donor of the power; the intermediate heirs of such donor not having been so seised as to render them new stock of inheritance. 4 *Kent Com.*, 387.

In deciding the case reported in 4 *Md.*, 11, the question as to the effect of the legal fee being in the heir or heirs of the trustee last deceased was not adverted to, and in the then condition of the parties, and their relation to the subject of controversy, it was wholly unnecessary. The result would have been the same, as the case then stood, whether considered in reference to the estate vested in the trustees or otherwise. Perhaps it was not exactly accurate to speak of the estate in which the daughter Dorcas had an interest, the remainder over in default of issue being void, as falling back to the estate of the original donor of the power, and descending as undisposed of property to his heirs-at-law. This, however, in no manner affected the result.

It follows that the fund in controversy in this case must be distributed into four parts, according to the contention of the appellees, and not into six, as contended by the appellant; and that the order appealed from must be affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 28th January, 1880.)