## ROBERT DUN DOUGLASS *v.* SAFE DEPOSIT AND TRUST COMPANY.

[No. 37, January Term, 1930.]

*Decided May 1st, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Clarence A. Brandenburg* and *J. Kemp Bartlett,* with whom were *A. Parker Smith, Edgar Allan Poe, and R. Graham Dun Douglass,* on the brief, for the appellant.

*Edwin G. Baetjer,* with whom were *Joseph France* and *Venable, Baetjer & Howard,* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

In 1859 Robert Graham Dun purchased a business which from that time to the time of his death in 1900 he operated, enlarged, and developed, under the name of R. G. Dun & Company, or the Mercantile Agency. He left a will by which the business was directed to be managed by four trustees, the income or profits therefrom to be paid to his widow during her life. The term of this testamentary trust was during the lifetime of his widow, Mary B. Dun, and for a period of one year after her death. The testamentary trustees were Robert Dun Douglass (the plaintiff below and appellant here), Francis L. Minton, Walter D. Buchanan, and Mary B. Dun. At the termination of the testamentary trust the business was

bequeathed to the named children of the testator's two sisters, Elizabeth Dun Douglass and Lucy A. James, in unequal proportions. By virtue of said will, on the termination of the trust the entire business and property vested absolutely in the following children of the two sisters, in the following proportions: To William A. Dougless, 6/60; Benjamin Douglass, Jr., 6/60; Robert Dun Douglass, 6/60; George Douglass, 6/60; Thomas James, 9/60; Lucy James Dun, 9/60; and Jane James Cook, 18/60. Mrs. Dun, the widow, died in November, 1910, and the testamentary trust terminated on November 2nd, 1911. After the termination of this trust the owners continued to conduct the business until May 16th, 1912, through attorneys in fact appointed by the owners; these attorneys in fact or agents being Robert Dun Douglass, Francis L. Minton, and Thomas James; Joseph Packard being substituted for Thomas James upon the death of the latter, February 24th, 1912.

On May 16th, 1912, the owners of the business executed a remarkably clear and carefully prepared agreement, designated in the instrument a "trust agreement" and so called by the appellees herein, but which is designated as a "partnership agreement" by the appellant. The agreement, after reciting the property conveyed, the provisions of Robert G. Dun's will in respect thereto, the death of his widow, the continuation of the business by the surviving trustees for one year after her death and by the attorneys in fact from November 2nd, 1911, the substitution of Joseph Packard as one of such attorneys in place of Thomas James, naming the then owners of the property, that the parties to the agreement consider that the nature of the business and the continued usefulness and value thereof require that the entirety of the business be preserved and its conduct continued under a form of organization properly adapted to securing its stability, growth, and prosperity, and are of the opinion that it is impracticable to attain those ends through the direct and personal administration of the present legal owners, and that the legal ownership of the same should be vested in trustees, and that upon the termination of the testamentary trust the

owners were unable to agree among themselves as to the form and terms of an organization under which the business should be continued and preserved; declares that the parties of the first part (who were all of the owners with the exception of George Douglass, who owned 6/60), who, for reference and not as a legal definition, are described as the "proprietors," for a named valuable consideration, evidenced by the signatures to said agreement, sold, assigned, transferred and conveyed to Robert Dun Douglass, Francis L. Minton, and Joseph Packard, thereinafter described as the "trustees," their survivors, survivor and successors, all of the interests of the parties of the first part in and to all the property which was bequeathed as aforesaid by the will of Robert Graham Dun, including the good-will of the business, with all accretions thereto, as it then existed, to have and to hold the interests in the said good-will, property and business thereby transferred and conveyed, "in trust, during the period and upon the terms and conditions hereinafter set forth." Lucy J. Dun was named as one of the parties of the first part; she, however, did not sign the agreement, having been adjudicated a lunatic by inquisition in the Circuit Court for Baltimore County May 6th, 1912, the jury finding that she had been a lunatic without lucid intervals since June 27th, 1910. On May 7th, 1912, that court appointed Jane J. Cook, the sister of Lucy J. Dun, committee of her person, and the Safe Deposit & Trust Company of Baltimore committee of her estate, with full power and authority to take charge of and manage her property, subject to the order and direction of that court; and that corporation signed the agreement of May 16th, 1912, as her committee. The term of the trust created by this agreement was for the life of the survivor of two named persons and twenty-one years thereafter. The agreement particularly described the powers and duties of the trustees and of the proprietors. The trustees were given power to manage and conduct the business, subject to the enumerated reserved powers of the proprietors. The trustees were authorized to designate themselves and conduct business as if they among themselves were partners, either

by naming themselves individually as co-partners, or with the addition of the word "trustees" after their names as co-partners; but with respect to the proprietors they were not individually liable as partners. In other words, the trustees were to conduct the business with respect to outsiders as if they were a partnership, with all of the property of R. G. Dun & Company belonging to the proprietors responsible for any obligation incurred by the trustees, and the net profits derived from the business distributed among the proprietors according to their respective interests. The proprietors reserved control of the trustees. Those entitled to a major part of the profits may (1) remove and retire trustees at will, (2) appoint a successor and fix his compensation, (3) change compensation of existing trustees, (4) increase or decrease the number of trustees, provided they should never be less than three, (5) open new offices, (6) fix dates for trustees' reports, (7) prevent any proprietor transferring his interest except by will, (8) decide any question on which the trustees are not unanimous and direct what course shall be pursued in such case. Those entitled to seventy-five per cent. of the profits may (1) terminate the trust and cause all rights to revert to the proprietors, (2) cause the trustees to sell the whole property at a price, (3) incorporate the business, (4) amend the trust deed by addition, subtraction, or modification, provided it does not diminish the quantity or relative value of the ownership of any proprietor in said trust estate or in the profits thereof.

By article XXVI it is provided: "In all cases in which action or dissent of proprietors is required, the legal guardian or committee of the property of any proprietor who, by reason of infancy or other cause, has not legal capacity to act upon his or her own behalf, and the executors, administrators or trustees, when a proprietary interest is at the time held by executors, administrators or trustees, shall have and may exercise the right and power in respect of any such interest to join for action or dissent with other proprietors." Article XXVIII is: "By the word 'trustees,' wherever it is found in this instrument, is meant the persons who are herein ex-

pressly named and designated as trustees, and also their survivors or survivor, and each and every of their successors in office, and the word 'proprietors,' wherever used herein, refers not only to the present proprietors, but to their respective successors in interest, and whenever there has been such a succession of interest, the successor, for the time being, shall possess the rights, powers and authority, and be subject to the obligations and limitations of a proprietor to the same extent as though he or she had as an original proprietor been a party to this instrument. The term 'successor in interest,' as used in this instrument when referring to the interest of any of the proprietors, applies to a person or persons whose title is derived from any of the parties of the first part." By article XX it is provided: "The relations of the trustees to the subject-matter of this instrument shall be governed by the general rules and principles of equity jurisprudence as applied to trustees." The agreement also provided for the purchase of George Douglas' 6/60 interest, which was subsequently consummated and resulted in increasing each of the proprietors' interests by 1/60, each of said proprietors having paid one-sixth of the cost thereof. From May 16th, 1912, to October 31st, 1927, certain changes took place in the personnel of the proprietors and trustees, so that on the latter date the business of R. G. Dun & Company, including all property owned and used in connection therewith, and the good-will thereof, was vested in Robert Dun Douglass, Francis L. Minton, Archibald W. Ferguson, and Charles F. Tuttle, trustees, in trust for the following persons called proprietors, in the following proportions: Jane James Cook, 19/60; Lucy Wortham James, 10/60; Safe Deposit & Trust Company of Baltimore, trustee under the will of Lucy J. Dun, 10/60; Robert Dun Douglas, 7/60; William A. Douglass, 7/60; legatees and devisees of Benjamin Douglas, Jr., 7/60.

On October 31st, 1927, Jane James Cook, Lucy Wortham James, and the Safe Deposit & Trust Company of Baltimore, trustee under the will of Lucy J. Dun, deceased, together owning 39/60 of the R. G. Dun & Company business and property, and being entitled to 39/60 of the profits arising

therefrom, formed an unincorporated voluntary association, under the name "Dun Investment Association." The purpose and business of this association generally is to acquire the 39/60 interest of the three named proprietors in the R. G. Dun & Company trust, and to acquire shares of the other proprietors to the extent deemed advisable by the board of directors of the association; (a) to collect the shares of the parties in the profits distributable under the trust agreement; (b) to sell for cash or securities the whole but not part of the undivided interest in the R. G. Dun & Company trust held by the association; (c) to join with other proprietors in selling and transferring the whole R. G. Dun trust estate pursuant to article XXI of the trust agreement; (d) to join with the other proprietors in incorporating R. G. Dun & Company pursuant to article XXII; provided, however, as to the matters contemplated by clauses (b), (c) and (d) above, and not otherwise, that the action of the investment association in so doing be unanimously approved by all of its board of directors and by the holders of a majority of its shares from time to time outstanding, such approval of directors and shareholders to be expressed in writing at a meeting or meetings. All other rights and actions of the association, as a proprietor in R. G. Dun & Company, such as the right to direct or remove trustees, are controlled by a majority in interest of the association. The capital of the association consists of shares, all distributed among the parties in proportion to their interest in R. G. Dun & Company assigned to the association. Certificates of beneficial interest in the association, assignable without restriction, are issued to each member. The association business is governed by a board of three directors, no one of whom need be a shareholder, elected annually by a majority vote of the members. The officers consist of the president, treasurer and secretary, elected annually by the directors. At any meeting of the proprietors under the R. G. Dun trust agreement, all of the directors of the association are to represent the association, but any action of the association as proprietor is to be determined by a majority. One of the directors is designated the

senior director, and in case no more than two directors attend meeting of the proprietors, in case of disagreement between the two, the senior director is empowered to cast the vote of the association. The death of a shareholder does not dissolve the association. The term of the agreement is co-extensive with that of the R. G. Dun & Company proprietors' agreement. Dissolution in advance of the regular termination may be had, by-laws may be made and amended, and the articles of the association may be amended, by the action of a majority in interest of the members. Its present directors are: J. J. Nelligan, president of the Safe Deposit & Trust Co.; Jane James Cook; and Lucy Wortham James. The respective interests as proprietors of R. G. Dun & Company, held by the Safe Deposit & Trust Company, executor and trustee under the will of Lucy J. Dun, Jane James Cook, and Lucy Wortham James, were assigned by each of them to the Dun Investment Association on the date of its organization. The consent to each of said assignments by all three of the assignors was evidenced by their signatures, they at the time being proprietors of 39/60 interest in the R. G. Dun & Company trust, and being those entitled to a major part of the profits arising from that business.

On November 23rd, 1927, J. J. Nelligan, as president of the Dun Investment Association, sent the following letter addressed to R. D. Douglass, A. W. Ferguson, and Charles F. Tuttle, trustees of R. G. Dun & Company, 290 Broadway, New York City:

"I beg to advise that Mrs. Jane James Cook, Mrs. Lucy Wortham James and the Safe Deposit and Trust Co. of Baltimore, trustee under the will of Lucy J. Dun, deceased, have assigned their respective interests in the business and assets of R. G. Dun & Co. held by you as trustees to the Dun Investment Association. I enclose, for your files, an original of each of said assignments. The directors of the Dun Investment Association are Mrs. Cook, Mrs. James and the writer. The officers are J. J. Nelligan, president; John W. Marshall, treasurer and secretary. Please take proper

note and make record of said assignments. Until further advised, please continue to pay the share of profits due under said assignments to the assignors. For your information, I would advise you that the articles of the Dun Investment Association have provided that all three of said directors may be present at any meeting of the trustees and proprietors of R. G. Dun & Co."

The record discloses that subsequently the appellant acknowledge to Mrs. Cook the receipt of the notice of the formation of the Dun Investment Association, and inquired of her: "Have you anything further to say about it?" That in response to such inquiry, Mrs. Cook informed him: "The Dun Investment Association was formed, and Mrs. James, the Lucy Dun Estate, and myself conveyed our respective interests in the R. G. Dun & Co. business to it. We all felt that, in view of the possibility of the interest represented by each of us becoming scattered through death or otherwise, it was very much to our advantage and also to the advantage of the Douglass interests, that the control of the business should be in the hands of a small group so that it might be continued without the risk of introducing into it any unknown or outside interests, such as might happen if the Lucy Dun Trust expired and the Rucker family became possessed of that interest. As the matter stands now, the Dun Investment Association will have the controlling voice in the appointment of trustees in case of the death of any of the present trustees, and the right to direct the trustees in the management of the business, and that, I think, is a very important safeguard to the Dun business." After which the appellant informed Mrs. Cook as follows: "I am very much obliged to you for telling me so much in detail, in regard to the Dun Investing Association. I think it ought to work out very satisfactory for all of us, as the Dun Investing Association and ourselves will be the only ones interested. There is one suggestion I would like to make and that is that the 'Investing Association' should make appointments from our *rank* and *file,* and not appoint people who have had no·experience in the business."

That subsequently negotiations looking to the sale of the entire R. G. Dun & Company business were had; that the interest owned or controlled by the Dun Investment Association was favorable to such a sale, but failing in getting the consent of the necessary interest in R. G. Dun & Company, to wit, of those entitled to seventy-five per cent. of the profits, the proposed sale could not be consummated. That during the months of April and May, 1928, as a result of directions contained in letters from the Dun Investment Association to the appellant, and his acquiescence therein, the compensation of the appellant as trustee, which theretofore had been three per cent. of the net profits, was reduced to two per cent. That on September 11th, 1929, J. J. Nelligan wrote the following letter to the appellant:

"Your several letters addressed to directors of the Safe Deposit & Trust Co. contain statements which are not correct. The Dun Investment Association is the owner of 39/60 interest in the Mercantile Agency of R. G. Dun & Co., and the action in respect to Mr. Graham Douglass was ordered by the owners of the association, viz: Mrs. Cook, Mrs. James and the Safe Deposit & Trust Co., trustee of the estate of Lucy J. Dun. The trustees of R. G. Dun & Co. were advised of this action and it was they who called for the resignation of Mr. Graham Douglass. The owners of a majority interest in R. G. Dun & Co. have certain rights conferred on such majority owners by the trust agreement, and these rights can be exercised at any time. Mr. A. W. Ferguson, general manager, advised you and all the owners that now was the best time to sell the business for the reason that continued consolidations among subscribers and competition in the business made the outlook for the future very uncertain. The Douglass' interests decided they preferred to hold on, as they had a right to do. The result is—plans for a continuance of the business must be made for the protection of all the owners. In making these plans, the majority owners, having the largest amount at stake, have the right under the trust agreement to

control. You are no longer young. Mr. Stone Doug-
lass, as you have said, is not competent, and, if my
recollection is correct, the trustees of the business have
always said the young Douglasses would not do. In view
of the foregoing, I said to Mr. Stone Douglass in New
York that I would recommend to Mrs. Cook and Mrs.
James and the Lucy J. Dun Estate that you be asked
to allow a New York man to take your place as trus-
tee and the other Douglasses retire. No action has been
taken as yet by these owners on my recommendation,
but it is my belief they will approve."

It is evident from this letter that it was the purpose of
those controlling the Dun Investment Association to remove
the appellant as one of the trustees of R. G. Dun & Company.

Whereupon the appellant filed a bill in Circuit Court No.
2 of Baltimore City reciting substantially what has been here-
tofore stated, and praying (1) that an injunction might issue
against the Dun Investment Association and those controlling
the same as individuals, enjoining them, through or under the
guise of the Dun Investment Association, an unincorporated
association, from further carrying into execution their threat
to remove or cause the removal of the appellant from his
position as one of the active agents, trustees, or partners in
the management of the business of R. G. Dun & Company;
(2) that the assignments by the Safe Deposit & Trust Com-
pany, as executor and trustee under the will of Lucy J. Dun,
deceased, Jane James Cook, and Lucy Wortham James, to
the Dun Investment Association, be declared to be in viola-
tion of the proprietors' agreement of May 16th, 1912. A
writ of injunction was issued as prayed in the bill of com-
plaint, reserving to the defendants the right to move for a
dissolution thereof at any time after filing their answer to
the bill of complaint, on giving the complainant five days'
previous notice of such motion. The defendants answered
the bill and moved for a dissolution of the injunction on
November 25th, 1929. Testimony was taken and argument
heard on the motion, and on December 31st, 1929, the chan-

cellor passed a decree dissolving the injunction and dismissing the bill of complaint. It is from that decree the appeal here is prosecuted.

Much of the arguments and briefs has been directed to the question whether or not the agreement among the then owners of R. G. Dun & Company of May 16th, 1912, created a partnership *inter sese*. The appellant contends that it has that effect, and cites in support of that view a line of decisions of the Supreme Court of Massachusetts in which agreements analogous to the one now under consideration have been declared to create a partnership *inter sese*. There are some decisions of other jurisdictions to like effect. Representative of these cases are: *Whitman v. Porter,* 107 Mass. 522; *Phillips v. Blatchford,* 137 Mass. 510; *Howe v. Chmielinski,* 237 Mass. 532; *Flint v. Codman,* 247 Mass. 463; *Bouchard v. First People's Trust,* 253 Mass. 351; *Simson v. Klipstein,* 262 Fed. 823; *McDowell v. Joiee,* 149 Ill. 124; *Marchulonis v. Adams,* 97 W. Va. 517; *Baker-McGrew Co. v. Union Seed Co.,* 125 Ark. 146. Such agreements are usually spoken of by courts and text-writers as "Massachusetts trusts." So far as we have been informed or been able to discover, this court has never been called upon to determine the question whether such an agreement constitutes the shareholders or proprietors partners *inter sese*. The Uniform Partnership Act, Code, art. 73A, sec. 6, defines a partnership to be: "An association of two or more persons to carry on as co-owners a business for profit. But any association formed under any other statute of this State, or any statute adopted by authority, other than the authority of this State, is not a partnership under this article, unless such association would have been a partnership in this State prior to the adoption of this article." While decisions of other jurisdictions are persuasive, they are not controlling upon this court; and in view of our former decisions holding in effect that the controlling test as to whether a partnership *inter sese* is created is the intention of the parties to the agreement (*Heise v. Barth,* 40 Md. 259; *Rowland v. Long,* 45 Md. 439; *Waring v. Nat. Marine Bank,* 74 Md. 278; *Tomlinson v. Dille,* 147 Md. 161; *Southern Can*

*Co. v. Sayler,* 152 Md. 303), we do not now determine whether the agreement of May 16th, 1912, creates a partnership *inter sese,* for the reason that in our view it is immaterial for the decision of the question here involved.

The thing sought by the appellant to be enjoined is his removal as trustee of R. G. Dun & Company under the agreement of May 16th, 1912. By Article XIV of that agreement it is provided that those proprietors who shall be entitled at the time to receive "not less than a major part of the profits of the business," "may in their discretion at any time and from time to time, without cause or ground other than their own will, remove and retire from office any one or more of the trustees, and appoint and fix the compensation of such successors to act in lieu of those so removed"; that the exercise of that power and authority "shall be evidenced by one or more instruments in writing, subscribed by the parties and delivered either in person to a trustee, or at the chief office of the business." This provision would be equally legal and valid, whether contained in a partnership agreement or in a "Massachusetts trust." The trustees of R. G. Dun & Company are the managers and conductors of the business in accordance with the terms of the agreement, and whether this be a technical partnership or not, they are subject to removal in the manner prescribed in the agreement. If it is a partnership, the managers could be removed by a majority in interest, without a special provision to that effect. Therefore, whether it is a trust or a partnership, the appellant could be removed, by complying with the terms of the agreement prescribing how and when such removal may be brought about. We know of no rule or statute pertaining to partnerships or the duties owed by one partner to the other, which is in conflict with the right of removal as prescribed in the agreement now before us. The agreement specifically provides when and how a trustee may be removed, and the inquiry, therefore, is: "Is the threatened removal, in the manner disclosed by the record, violative of the terms of the agreement of May 16th, 1912?" This involves a determination as to whether or not the Dun Investment Association is a pro-

prietor entitled to a major part of the profits of R. G. Dun & Company. The Dun Investment Association is the legal owner or holder of 39/60 interest of R. G. Dun & Company, which it acquired by assignments from the prior owners thereof, namely, the Safe Deposit & Trust Company, trustee of Lucy J. Dun's estate, Jane James Cook, and Lucy Wortham James. But the equitable owners, that is to say, those entitled to the profits from the R. G. Dun & Company business, are still the assignors, as evidenced by their certificates in the Dun Investment Association and a direction by that association to the trustees of R. G. Dun & Company to continue to pay those profits directly to the assignors.

The apparent, if not declared, purpose of the formation of the Dun Investment Association is to control the business of R. G. Dun & Company by combining the interests theretofore owned by the trustee of Lucy J. Dun, Jane James Cook, and Lucy Wortham James in that association, under such internal rules and regulations as can result in the control of R. G. Dun & Company by those who at the time are entitled to less than a major part of the profits thereof. The agreement by which the Dun Investment Association was formed provides that the proprietary interest held by it shall be voted as a unit in respect to the business of R. G. Dun & Company; further, that how it shall be voted is to be determined by a majority in interest of that association. In other words, the equitable interest owned by Jane James Cook in R. G. Dun & Company is represented by 15,200 shares of the stock of the Dun Investment Association; the interest of Lucy Wortham James by 8,000 shares of said stock; and the Safe Deposit & Trust Company, trustee of Lucy J. Dun's estate, by 8,000 shares. A majority of these shares, namely, 15,601, can direct the vote of 39/60 interest in R. G. Dun & Company in respect to the removal of a trustee, and when so directed, 39/60 being a majority of the whole interest of R. G. Dun & Company, can remove and appoint a successor of such trustee. Such action would be violative of the terms of the agreement of May 16th, 1912, as to the removal of trustees, because the removal could be brought about by the

action of those entitled to less than a major part of the profits of R. G. Dun & Company. To illustrate: Prior to the formation of the Dun Investment Association, if the Safe Deposit & Trust Company, as trustee of Lucy J. Dun's estate, together with Lucy Wortham James, desired the removal of the appellant as trustee, and Jane James Cook was against such removal, it would be impossible to remove the appellant except by a combination with other proprietors, who, added to their own holdings, would constitute a majority. Yet, under the provisions of the Dun Investment Association agreement, it would make no difference whether Mrs. Cook consented to the removal or not, she would be bound to vote her interest as directed by the trustee of Lucy J. Dun's estate and Lucy Wortham James, they together owning 16,000 shares of the Dun Investment Association and Mrs. Cook 15,200. In short, the formation of the Dun Investment Association converts what before might have been a minority in R. G. Dun & Company into a majority, with power to do everything permitted to a majority by the terms of the agreement of May 16th, 1912.

We do not think that a court of equity should permit the clearly expressed provisions of the R. G. Dun & Company proprietors' agreement to be changed or subverted by any form or device which might result in action being taken in respect to the management of R. G. Dun & Company contrary to the lawful terms of that agreement. The certificates of ownership in the Dun Investment Association, a majority of which could control the R. G. Dun & Company business through their control of the Dun Investment Association, are assignable and transferable at will. If Mrs. Cook desired to transfer her 15,200 shares, or any part thereof, she is permitted to do so by the terms of the Dun Investment Association agreement; this, in effect, would transfer her interest in R. G. Dun & Company, but the method of transfer would be directly in conflict with the terms of the agreement of May 16th, 1912, which provides that no interest of a proprietor can in her lifetime be voluntarily transferred or assigned, pledged, or any lien placed thereon, without the con-

sent of a majority in interest in R. G. Dun & Company. After the assignment of their interest in R. G. Dun & Company to the Dun Investment Association, the assignors were the beneficial owners of the property assigned, and were still entitled to receive, even though indirectly, their respective shares of the profits of R. G. Dun & Company. (The record shows that at the present time they are receiving such directly.) And yet, while receiving such profits, if they are to be controlled by the Dun Investment Association agreement, although together they represent those entitled to a major part of the profits of R. G. Dun & Company,. they, by such device, permit the removal of a trustee by less than a majority.

Our conclusions on the whole case are: (1) That whether the agreement of May 16th, 1912, creates a partnership *inter sese* or a trust, makes no difference in the result; (2) that the interest of any proprietor signing the agreement of May 16th, 1912, or any one deriving title through any such proprietor, may assign and transfer his interest, provided the assignment is consented to in writing by those then entitled to not less than a major part of the profits of R. G. Dun & Company; (3) that the Safe Deposit & Trust Company, as committee of Lucy J. Dun, lunatic, was a competent party to sign the agreement of May 16th, 1912, under the order and direction of the Circuit Court for Baltimore County, and that, at her death, it being the executor and trustee named in her will, which was executed while she was sane, it became a proprietor by virtue of the terms of her will; (4) that the Safe Deposit & Trust Company, as trustee of the Lucy J. Dun estate, Jane James Cook, and Lucy Wortham James, by the terms of the agreement of May 16th, 1912, could assign the whole of their proprietary interest to any person or corporation, provided such assignment was consented to in writing at that time by a majority in interest of R. G. Dun & Company; but that any form of assignment which reserved to them their share of the profits of R. G. Dun & Company, which, however, could result in the removal of a trustee by direction of those who at the time were entitled to less than

a major part of the profits of R. G. Dun & Company, is contrary to the terms of the agreement of May 16th, 1912, and nugatory for that purpose. We see no reason why an order removing a trustee, signed by the Safe Deposit & Trust Company, as trustee for the estate of Lucy J. Dun, Jane James Cook, and Lucy Wortham James, as they are at this time proprietors entitled to a major part of the profits from the business of R. G. Dun & Company, should not be effective for that purpose. If, in addition, it be signed by the Dun Investment Association and William J. Rucker, life tenant under the will of Lucy J. Dun, deceased, the order would be no less effective.

> *Decree reversed, and cause remanded for further proceedings consistent with this opinion, with costs to the appellant.*

PARKE, J., dissents.