W. ALLAN PERKINS ET AL. *v*. LUCY J. IGLEHART
ET AL.
LOUIS S. D. RUCKER *v*. SAME
ARI M. BeGOLE *v*. SAME
FRANCES FLEITZ RUCKER ET AL. *v*. SAME
[Nos. 4-7, October Term, 1944.]

522

*Decided November 1, 1944.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Charles Markell, Edward H. Burke, G. C. A. Anderson* and *G. Van Velsor Wolf* in Nos. 4, 5, 6 and 7, with whom

were *John S. Battle* and *C. Venable Minor* on the brief in No. 4; *Bowie & Burke* submitted on the brief in No. 5; *Carman, Anderson & Barnes* and *Carey & BeGole* submitted on the brief in No. 6; *Jesse Slingluff* and *Marbury, Gosnell & Williams* on the brief in No. 7; for the appellants.

*Charles G. Page, G. C. A. Anderson, Edward H. Burke* and G. *Van Velsor Wolf* in No. 4; *Charles G. Page, Charles Markell, G. C. A. Anderson* and *G. Van Velsor Wolf* in No. 5; *Charles G. Page, Edward H. Burke, Charles Markell* and *G. Van Velsor Wolf* in No. 6; and *Charles G. Page, Edward H. Burke, Charles Markell* and *G. C. A. Anderson* in No. 7; with whom were *White & Page* on the brief, for the appellees.

MARBURY, C. J., delivered the opinioin of the Court.

This case arose through a trustee's petition filed in the Circuit Court for Baltimore County, asking for a construction of the will of Lucy James Dun. She died in 1921, a widow with one child, a son, William James Rucker. All parties thought by the trustee to have a possible interest in the estate were brought in by summons or order of publication, and those claiming interest appeared by counsel. Testimony was taken, numerous exhibits were filed, and from the decision of the chancellor four appeals were taken, all combined in one record, and all heard together in this Court.

Mrs. Dun had been twice married. Her first husband was Major William A. Rucker. William James Rucker was the son of this marriage. Major Rucker died in 1893, and in 1899 Mrs. Rucker married her second cousin, James Dun, who died in 1908. There were no children of this marriage. The estate which Mrs. Dun left was a valuable one, consisting very largely of an interest she had in the business of R. G. Dun and Co. See *Douglass v. Safe Deposit & Trust Co.*, 159 Md. 81, 150 A. 37. This interest became part of her residuary estate, was subsequently disposed of by the trustee, and the proceeds in-

vested in securities which now constitute the estate which is to be distributed in these proceedings.

Mrs. Dun, in her will, gave various specific and pecuniary bequests, and then by the fourteenth clause provided as follows:

"14.   All the rest and residue of my property of every kind, I give, devise and bequeath to the Safe Deposit and Trust Company of Baltimore, in trust to hold the same, with full power to the said Trustee, both as to this trust and as to the trust created by the second clause of this my will, to make and change investments from time to time in its discretion and to sell the whole or any part of the trust estate for any purpose which, in its discretion, may be for the best interest of the same, without obligation on the part of any purchaser to see to the application of the purchase money, and to collect the income of the said trust estate and, after deducting taxes and expenses of administration, to pay over the net income thereof in monthly or quarterly instalments, as it may deem best, to my son William James Rucker, during his life, into his own hands and not into the hands of another and without power of anticipation, or,. if my said Trustee shall deem it to be for the best interest of my said son, to apply the said net income for his benefit and for the benefit of his family in its discretion, during his life; and from and after the death of my said son to set apart one-third of said trust estate and pay the net income thereof to his widow during her life or widowhood, and to hold the remaining two-thirds of said trust estate for the benefit of his child or children living at the time of his death and the descendants then living of his deceased children, per stirpes and not per capita, and to pay over and transfer the same, free of any trust, to such of them as shall attain the age of twenty-one years, the original share of each therein to be paid when such age is attained, and any addition thereto, accruing by reason of the death under such age of any beneficiary, to be paid upon such event or as soon thereafter as the person hereby entitled

to receive the same is of full age, and until each of them shall attain such age, to apply his or her share, original or accruing, of the net income of said trust estate to and for his or her benefit, maintenance and education, in its discretion; but, if my son shall die without children or descendants him surviving, or if all of them shall die before attaining the age of twenty-one years, then to divide, pay over and transfer the same, free of any trust, to and among the persons who may be the next of kin of my said son according to the laws of Maryland at the time of his death; and from and after the death or remarriage of the widow of my said son, to hold the one-third part of the trust estate, so as above set apart for her, for the benefit of the child or children of my said son then living and the descendants then living of his deceased children, per stirpes and not per capita, under the same limitations as are herein above set forth as to the two-thirds part of the trust estate; but if there shall be no such children or descendants then surviving, or if all of them shall die before attaining the age of twenty-one years, to divide, pay over and transfer the same, free of any trust, to and among the persons who would be the next of kin of my said son according to the laws of Maryland if he were living at the time of the death or remarriage of his widow. I authorize and empower my said Trustee to invest fifty thousand ($50,000.00) dollars of the trust estate, or so much thereof as may be requisite, in the purchase for my said son and his family of a home such as he may desire and select, the house and land so purchased to continue however as a part of the trust estate."

The son William J. Rucker, was twice married; both wives predeceased him. He was a resident of Virginia and died there December 19, 1941, testate, and without issue. W. Allan Perkins and George Pausch were made his executors. They are parties herein, and appellants in No. 4. The appellants in Nos. 5 and 6 are, respectively, a first cousin of William J. Rucker on his father's side, and the executor of a similar first cousin who has

died since William J. Rucker's death. The appellants in No. 7 are the widow and administratrix and only child of another first cousin on the Rucker side, who, however, predeceased William J. Rucker. The appellees are three first cousins of William J. Rucker on his mother's side. They are nieces of the testatrix, Mrs. Dun. Other facts in the case will be mentioned and discussed when the parts of this opinion to which they are pertinent are reached.

All of the questions here involved concern that part of the residuary clause of Mrs. Dun's will which disposes of one-third of the residuary estate, after the death of the testatrix's son. There is no dispute that the two-thirds, after the death of the son without leaving any children or descendants, went to the next of kin of the son at the time of his death, and we are advised that it has already been so distributed. The remaining one-third, however, is set apart under separate provisions, and it is in respect to this one-third that the parties have conflicting theories.

It is contended by the Rucker executors that the two gifts over, each to take effect from and after the death or remarriage of the son's widow, violate the rule against perpetuities. This rule is stated by *Gray on Perpetuities,* 4th Edition, page 191, paragraph 201, as follows: "No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest." The decisions of this Court follow this rule. It is stated in *Graham v. Whitridge,* 99 Md. 248, 274, 275, 57 A. 609, 671, 58 A. 36: "The period fixed and prescribed by law for the future vesting of an estate or interest is a life or lives in being at the time of its commencement, and 21 years and a fraction of a year beyond, to cover the period of gestation; and, where property is rendered inalienable or its vesting is deferred for a longer period, the law denounces the devise, the bequest, or the grant as a perpetuity, and declares it void." This statement is quoted with approval in the case of *Gambrill v. Gambrill,* 122 Md. 563, 89 A. 1094,

and the Court further said, 122 Md. at page 569, 89 A. at page 1095: "In determining this question of remoteness, there is an invariable principle that regard is to be had to possible, and not merely actual events. It is not determined by looking back on events which have occurred and seeing whether the estate has extended beyond the prescribed limit, but by looking forward from the time the limitation was made and seeing whether, according to its terms, there was then a possibility that it might so extend. * * * The event upon the happening of which the remainder is to vest must be one that is certain to happen within the prescribed period, or the limitation will be bad." There is quite a full discussion of the origin and applicability of the rule in the late case of *Safe Deposit & Trust Co. v. Sheehan*, 169 Md. 93, 179 A. 536, 542, where it was said: "The rule is applicable to limitations of either legal or equitable estates in either real or personal property."

The contention of the Rucker executors is that the widow of the son of the testatrix might have been born after the death of the testatrix, and might have lived longer than twenty-one years and the period allowed for gestation after the death of the son. Therefore, the gift over to the children and descendants, and the gift over to the next of kin in the absence of children and descendants are both void, because both might fail to vest within the required period. This view, which was adopted by the chancellor, seems to be correct, if we read the residuary clause as it is written. It is, however, strenuously resisted for various reasons by other parties to the case. We will take up their contentions in the order which seems most logical. Before doing so, however, it may be well to restate the general rules of construction of wills, so that they may be borne in mind. The whole intention of the testatrix is to be ascertained from the entire will, as well as any specific intention shown in the particular clause under discussion. This intention is to be gathered not only from the will, but from pertinent circumstances surrounding the testatrix

at the time of making the will. In cases where it is claimed that the rule against perpetuities is violated, the Court first decides what the will means, and then determines whether the will so interpreted violates the rule. There is a presumption against intestacy, especially where there is a residuary clause, indicating that the testatrix intended to dispose of her entire estate. If there are two constructions, either of which can be adopted without straining the words of the will, the Court will adopt that one which disposes of the entire estate, rather than one which results in a total or partial intestacy. But the Court will not write a new will, nor attempt to surmise what the testatrix would have done had she thought of the contingency which has arisen. Nor will the Court substitute its own judgment for hers, as to what she should have done. It will interpret what she has said, in the light of the circumstances which have arisen, and determine, from the will itself, what she meant.

The general intention of the residuary clause before us seems to be to provide for the son of the testatrix, his widow, his descendants and his next of kin. The entire clause revolves around the son. No question arises, or could arise, as to the estate given to the son's widow during her unmarried life. It vests within the required period. The question arises as to the two subsequent bequests of the one-third taking effect "from and after the death or remarriage of the widow." The first of these directs the one-third residuary estate to be held for the benefit of the child or children of the son "then living," and the descendants "then living," of his deceased children per stirpes and not per capita. It has been suggested in connection with this bequest that it comes within the rule that a contingent estate to a class vests immediately upon the birth of a member of that class, and becomes vested as to him, with the possibility of his being divested as to part by the subsequent birth of other members of the class. The latest applications of this rule are found in the cases of *Bishop v.*

*Horney,* 177 Md. 353, 9 A. 2d 597; *Hans v. Safe Deposit & Trust Co.,* 178 Md. 52, 12 A. 2d 208, and *Safe Deposit & Trust Co. v. Bouse,* 181 Md. 351, 29 A. 2d 906. The argument for its application to the present case is that any children of the son must have been in being at his death, or within the usual period of gestation thereafter, and therefore the gift must have taken effect within the period. This view, however, does not take into account the fact that the bequest is not only to the children, but to descendants of deceased children and the further fact that the time of ascertainment of the beneficiaries is fixed at the death or remarriage of the widow. Descendants of deceased children might be the only persons of the class in existence at the death or remarriage of the widow, and they might not have been born during the lifetime of William James Rucker or twenty-one years thereafter. "If a gift is to a class in this technical sense, and the gift is good as to some members of the class, but is within the rule against perpetuities as to other members, the entire gift must fall. The general rule is that if a gift is void as to any of a class, it is void as to all the class." *Miller on Construction of Wills,* paragraph 328, page 932. "Assuming then that the devise is not to vest until the remote period, the devise to the whole class is bad; and it is immaterial that some persons are *in esse* who should they reach twenty-five would be entitled to share." *Gray on Perpetuities,* 4th Ed., paragraph 373, page 394, paragraph 537, page 522. See also 48 *Corpus Juris, Perpetuities,* paragraph 44, page 964, and paragraph 46, page 965. The principle that a contingent gift to a class vests on the birth of a member of the class cannot be applied to make a void estate valid, because it would then conflict with the rule that whether an estate is void as a perpetuity must be determined by what might happen, rather than by what has happened.

It is contended by the appellants in all four appeals that neither the bequest to the children and descendants, nor that to the next of kin are void because the word

"widow" in the will does not mean widow in the usually accepted sense of a surviving wife, but means Sally Woods who was engaged to the son at the time the will was made on April 7, 1910, and who married him twenty-one days later. She was in being at the death of the testatrix, dying on December 20, 1932. The surrounding circumstances which we are asked to consider in connection with this contention are that the will was made at the time when Mrs. Dun had come to Baltimore to take part in the festivities in connection with her son's approaching marriage to Sally Woods; that she undoubtedly had no other thought except that Sally Woods would ultimately become her son's wife, and might become his widow; that she did not name Sally Woods because of a natural delicacy under the circumstances, but that she meant Sally Woods when she used the word "widow." Maryland cases and cases from other jurisdictions are cited in support of this contention. The Maryland case principally relied on is *Lavender v. Rosenheim,* 110 Md. 150, 72 A. 669, 132 Am. St. Rep. 420. In that case a mother left her estate to a trustee to pay income to her son during his life, and upon his death to pay the principal to his children. In the event no children survived, the principal of the trust estate was given absolutely to "the wife of my said son." The son, at the time the will was made, was married. His wife subsequently divorced him and married another man. The son died, leaving no children, and the Court held that his former wife was entitled to the estate. Other cases, which hold that if at the time of the making of the will, there is a person who would fully answer the description of a widow should she survive her husband such person is meant by the word "widow," are *Mercantile T. & D. Co. v. Brown,* 71 Md. 166, 17 A. 937; *In re Solm's Estate,* 253 Pa. 293, 98 A. 596; *Anshutz v. Miller,* 81 Pa. 212; *Van Brunt v. Van Brunt,* 111 N. Y. 178, 19 N. E. 60; *In re Friend's Estate,* 168 Misc. 607, 6 N. Y. S. 2d. 205; *Willis v. Hendry,* 127 Conn. 653, 20 A. 2d. 375. It is, of course, well recognized that a beneficiary may be desig-

nated by description rather than by name, and that who is intended can be determined by who would answer that description had the contingency upon which the estate to such person is limited, happened at the time of making the will. That is all these cases hold. In each case the widow was the wife at the time of the making of the will. Had her husband's death occurred at that time, she would have been the widow. In the case before us we are asked to go much further. We are asked to hold that a person who is not married to the testatrix's son is the person she means by her son's widow. It so happened that this person did marry the son, that she died before he did, and that he then married another wife who also predeceased him, and that he died leaving no widow at all. If we should say that Mrs. Dun meant Sally Woods by the word "widow" she used, and if it should have happened that Sally Woods had not married the son at all, but that he had married someone else who survived him, it would necessarily follow that Sally Woods would get the bequest although she had never actually become connected with the testatrix by marriage to her son. The real widow would not take at all. This possible contingency illustrates the instability of the contention. What Mrs. Dun was interested in doing was to take care of her son and his relations. He was taken care of for his life, his widow was taken care of for her unmarried life, his children and descendants and finally his next of kin were attempted to be taken care of. All the residuary clause related to the son, and all the beneficiaries were to take by virtue of their relationship to the son. It was the relationship to the son, and not any particular friendship for Sally Woods which motivated the bequest. Mrs. Dun said she was providing for her son's widow. We must assume that was what she was doing, and not that she was trying to take care of a particular person, even though she thought that person might some day be the widow of her son.

It is also contended that by reason of certain proceedings in this case and a clause in the son's will the

executors of the son are estopped from making any claim that any part of the will is invalid, and also that in these proceedings there has been a prior judicial construction of the will. An examination of the record, however, does not sustain these contentions. On October 26, 1921, the trustee filed a petition in the Circuit Court for Baltimore County in which it said that the son and his wife (then Sally Woods Rucker) were dissatisfied with an authorization in the residuary clause of the will to the trustee to invest $50,000 of the trust estate for the purchase of a home for the son and his family. The trustee further pointed out that if the son and his wife should institute proceedings attacking the validity of the will, it would result in a considerable expense to the estate, and that the trustee had agreed with the son and his wife to pay them $50,000 absolutely in place of expending the said sum for a home, and thus settle all questions connected with a contest of the will. With this petition was filed a copy of an agreement dated the same day in which the son and his wife agree that if this payment is made they "hereby ratify the said last will and testament and agree to abide by its terms." This compromise settlement was ratified by the Court. Subsequently, in 1923, the trustee filed a bill of complaint which was the initiation of the present proceedings. The purpose of this bill of complaint was to ask the Court to assume full jurisdiction of the trust and to authorize the trustee to continue to hold the undivided one-sixth interest in R. G. Dun and Co. subject to an agreement which had been made in May, 1912, and to determine the rights of the son and his wife in the revenue and profits from the business of R. G. Dun and Co. The Court was asked to consolidate the petition of October 26, 1921, already referred to, with this case. The son and his wife, Sally Woods Rucker, filed an answer in which they claimed that all of the profits received from R. G. Dun and Co. constituted income of the trust estate created by the residuary clause of Mrs. Dun's will, "and under the terms of said will are all payable to the De-

fendant, William James Rucker, during his life and after
his death, one-third thereof to the Defendant's wife,
Sally Woods Rucker, during her life or widowhood."
The case was immediately submitted, and the Court
signed a decree, consolidating the two cases, assuming
jurisdiction of the trust, holding that all the net income,
including the profits from the business of R. G. Dun
and Co., belonged to the son "and that from and after
the death of William James Rucker, his wife is entitled
to receive from said trustee, during her life or widow-
hood, one-third of said net income." It is obvious that
these two proceedings were taken, the first to approve a
compromise settlement, and the second to determine
whether certain revenue was income or corpus. In the
first proceeding the son agreed not to attack the validity
of the will, but said nothing about its construction. In
the second, he and his wife said that she would be en-
titled to one-third of the income after his death, and the
Court so decreed. At that time, Sally Woods was the
son's wife and the decree of the Court was not constru-
ing the will with respect to a situation which might
arise in case Sally Woods should not be the son's widow.
On the contrary, it was assuming from the fact that she
was then his wife that as his widow she would be en-
titled to the income from one-third of the residue of the
estate, which is something no one now disputes. It
would be a very strained interpretation of the decree
to assume that the Court decided that Sally Woods would
be entitled to this income at the son's death, even if, by
reason of divorce, she might not then be his widow. The
Court did not have before it all the persons who might
be entitled to dispute such construction, such as some-
one else who might really become the son's widow. We
cannot assume that any such ideas were then in the
minds of the Court or of the parties to the case. There
was not, nor could there be any judicial interpretation
of the will extending any farther than the situation as
it then existed. There is nothing in the papers filed by
the son which estops his executors from contending now
for a proper construction and interpretation of the will.

In the will of William James Rucker, he states: "I have no relations closer in degree than first cousins; several of these I am only slightly acquainted with, several of them have substantial means of their own. Under the will of my mother, Mrs. Lucy James Rucker, which was admitted to probate in the Orphans' Court of Baltimore County, Maryland, on the 31st day of August, 1921, all of these cousins are provided for; hence I have not felt it proper to include in this my will or in the trust agreement of even date herewith any of my relatives other than those named, for all of whom I have a personal and affectionate regard." It is claimed that by this statement, he shows that he thought his mother's will was wholly valid, and that as a result some of the cousins who might have benefited thereby suffered by not being included in his will. But he probably had in mind the two-thirds part of the residue as well as the one-third, and under the two-thirds clause his first cousins got twice as much as they would have gotten under the one-third, were it valid. In any event, his construction of his mother's will, or his belief in its validity, would not estop his executors from now making the contention they do.

Another ingenious contention is made in an effort to prevent intestacy, and to make valid the limitations to the heirs of the son. In considering this we must bear in mind that the Court must not adopt strained constructions in order to avoid intestacy, but must construe the words of the will in their natural and usual meaning. The will directs the trustee, after the death of the son, to set apart one-third for the widow, and to hold the remaining two-thirds for the benefit of his child or children "living at the time of his death," and the descendants "then living" of his deceased children, per stirpes and not per capita, and to pay over and transfer the same free of any trust to such of them as shall have attained the age of 21 years, the original share of each therein to be paid when such age is attained, and any addition thereto, accruing by reason of the death under

such age of any beneficiary, to be paid upon such event or as soon thereafter as the person hereby entitled to receive the same is of full age, and until each of them shall attain such age, to apply his or her share, original or accruing, of the net income of said trust estate, to and for his or her benefit, maintenance and education, in its discretion; but if the son shall die without children or descendants, him surviving, or if all of them shall die before the age of 21 years, then to divide, pay over and transfer the same, free of any trust, to and among the persons who may be the next of kin of the son, "according to the laws of Maryland at the time of his death."

When the testatrix comes to the one-third, which is set apart for the widow, she gives this "from and after the death or remarriage of the widow of my said son" to the trustee to hold for the benefit of the child or children of the son "then living," and the descendants "then living" of his deceased children, per stirpes and not per capita, "under the same limitations as are herein above set forth as to the two-thirds part of the trust estate." The will then directs the trustee, if there are no such children or descendants "then surviving," or if all of them shall die before attaining the age of 21 years, to divide, pay over and transfer the estate, free of any trust to and among the persons who would be the next of kin of the son, according to the laws of Maryland, "if he were living at the time of the death or remarriage of his widow." The contention is made that the words, "under the same limitations," contained in the part of the will referring to the one-third, constitute a bequest to the next of kin by referential words, and that therefore the next of kin are to take the one-third at the death of the son without children or descendants, rather than at the death or remarriage of the widow in the absence of children or descendants of the son. In support of this, a number of cases are cited, among them *Elder v. Lantz,* 49 Md. 186; *Mercer v. Hopkins,* 88 Md. 292, 41 A. 156; *Lewis v. Payne,* 113 Md. 127, 77 A. 321, 30 L. R. A., N. S., 908; *Holmes v. Mackenzie,* 118 Md. 210, 84 A. 340; *Sut-*

ton v. *Safe Deposit & Trust Co.*, 155 Md. 483, 142 A. 627, and a number of cases from other Courts, as well as *Jarman on Wills*, 7th Ed., Vol. 2, page 657. These cases all have to do with situations where there was something left out of a bequest, and this was supplied by referring to other parts of the will where similar conditions or limitations could be found. It is true that some of them use the words "subject to the same limitations," which are found in Mrs. Dun's will, and it is also true that such limitations generally mean all of the limitations found. But we think that reasoning does not apply to a case where the limitations are obviously meant to supply only certain additional provisions as to the children and descendants which are incorporated in one bequest to them, but are not incorporated in the other. It could not be construed to over-ride the definite time fixed for the taking by the next of kin in the one-third, and to make it correspond to the definitely fixed different time of their taking, incorporated in the provision as to the two-thirds. If we were to adopt this construction of Mrs. Dun's will, we would ignore the time she fixed and the words she used, and would, in effect, write a new will for her.

Another contention stresses the idea which is undoubtedly correct that Mrs. Dun intended to give all of the residuary estate to the next of kin of her son in the event of failure of his issue. Such a gift was to come through two different and distinct channels; the two-thirds was to come through her son and the one-third through the widow of her son. The next of kin were always to take, but after different contingencies. It is therefore suggested that in order to avoid intestacy the Court should consider this general intention controlling, and instead of holding the gift to the next of kin of the one-third void, should treat it, under the circumstances which occurred, as passing at the death of the son without leaving a widow or issue. In other words, the Court is asked to hold that all of the provisions as to the one-third depended upon the existence of a widow and, if there were no widow, then the provisions as to the two-

thirds apply. In support of this contention the case of *Goldsborough v. Martin,* 41 Md. 488, is cited. In that case there was a void bequest to the issue of a daughter. There was also a specific clause that in case such issue should die in the life-time of the wife, then the property was given to the wife in fee simple. The Court held the last clause good. In that case, however, there was a different and specific contingency set out in the will under which the wife took. In the case before us, there is no clause which says that in the event the son died leaving no widow and no issue, then at the death of the son the property was to go to his next of kin. We cannot say that is what the clause contained in the will meant, when it fixed the time of taking by the next of kin from and after the death or remarriage of the widow, and also fixed the ascertainment of those of the next of kin who were to take to be made at the same time. If we were to say, that, because the son's widow did not survive him, the bequest to the next of kin is good, we would be construing the will in the light of what happened, rather than what might have happened, and would be giving to the words used by the testatrix the kind of strained interpretation which is not permissible.

We therefore hold that the bequests of the one-third of the residue of the estate, after the death or remarriage of the widow, are too remote and are void for that reason, and that there is a partial intestacy as to this one-third. When there is an intestacy, the estate goes to the heirs, or if it is personal estate, as this is, to the personal representatives of the testatrix. But a very important question immediately arises; that is, what is the *punctum temporis* at which such personal representatives are to be determined. The Rucker executors contend it is at the time of the death of the testatrix, at which time the son was her only heir, and therefore it belongs to his estate. The three nieces contend that it is the date of the death of the son without leaving a widow, in which case they are the only heirs. The chancellor decided in favor of the three nieces. The argu-

ment of the executors is that the testatrix left her residuary estate to trustees for the benefit of the son for life; at his death, one-third to the trustees for the benefit of his widow for her unmarried life; that both of these bequests are valid, but the subsequent bequests are void *ab initio*, and, therefore, there came into being at the death of the testatrix, a reversion in the son. The argument of the nieces is that the whole legal estate was in the trustees; that it was an absolute estate determinable only at the death of the son, without a widow, and without issue, at which time the intestacy first arose. As a result, they contend that there remained in the son, not a reversion, but only a possibility of a reverter, which devolves from heir to heir of the original owner, until the contingency happens which creates an actual reversion. They further contend that the son as the intermediate heir had no power to change the course of descent, and appropriate it to his own use, because he did not have the legal estate and could not transmit the estate he had. For this last contention they depend largely upon three Maryland cases: *Conner v. Waring,* 52 Md. 724; *Jenkins v. Bonsal,* 116 Md. 629, 82 A. 229; and *Shirk v. Lee,* 3 F. 2d 256.

The case of *Conner v. Waring* is the second of two cases involving the wills of Charles and Elizabeth Torrance. The first of these is *Torrance v. Torrance,* 4 Md. 11; Charles Torrance authorized his wife, Elizabeth, to dispose of his real estate among his children or their issue in such manner and proportion as she should see fit; with a direction, however, that as to the daughters, they should have their shares for life, and after their deaths, for the benefit of their children and their legal representatives. In pursuance of that power, his widow, Elizabeth Torrance, by her will, directed that the estate, real and personal, of her husband, should be divided into eight parts, one for each of her children. Three of the daughters were unmarried, and the provision as to each of them was in the same terms. The earlier case of *Torrance v. Torrance,* 4 Md. 11, involved the provision

for the daughter, Dorcas, who had died intestate, and without issue. The clause in the will of Mrs. Torrance, which was in question, gave a share of the property to two of her sons and the survivor in trust for Dorcas during her natural life, "And from and immediately after the decease of the said Dorcas, then, in trust, that the said share shall become the estate of all, and every the child or children she may have, and be equally divided between them, their heirs, executors, administrators and assigns, forever, as tenants in common, share and share alike. And in case any of her children shall die under age and without lawful issue, the part or portion of him, her or them, so dying, shall descend to, and become the estate of, the survivors or survivor of them, the said children." There is a further provision in Mrs. Torrance's will affecting all the daughters which reads as follows: "In the event of the decease of any of my aforesaid daughters, without leaving any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her or them, so dying, shall descend to, and be equally divided between, all my surviving children and their respective representatives, as tenants in common, share and share alike." The Court said that the expressions in the last clause were descriptive of an indefinite failure of issue, and that, therefore, the limitation over, being too remote, was void. The Court then said that the estate in which Dorcas had an interest, the remainder being void, fell back to the original estate of the testator and descended as undisposed of property to his heirs at law. When Louisa died the question arose as to the meaning of *Torrance v. Torrance* which, it was conceded, had settled the principle that must determine the devolution of Louisa's share. As a result *Conner v. Waring* came to this Court. It was there held that but for the estate limited to the trustees, the estate created for Louisa would have left the reversion in the heirs at law of the donor dependent upon the event of Louisa having issue. The Court said: "This was a limitation of a contingent re-

mainder to future children, and until the remainder became vested, if the fee had not been placed in trustees, it would have remained in the heirs-at-law of the original testator." The contention was made on behalf of the appellant, who was the executrix of Louisa Torrance, that since the latter had devised all her right and estate to the children of her brother, George, such devise changed the stirps of descent and constituted the devisees of Louisa a new stock of descent. This was based upon the old common law rule with respect to real estate known as *seisina facit stirpitem*. This was in effect that before an heir could actually make himself the stock of descent, and make hereditaments transmissible to his own heirs, he must be actually seized of the property in law or in deed, and "if he die before entry or other actual seisin or possession obtained, the brother of the half blood shall succeed to the inheritance in exclusion of the sister of the whole; as the person now claiming must make himself heir to him who was last actually seized by entry, receipt of rent, presentation to advowson, etc., or to the original purchaser or mesne grantor as the case may require." *Watkins' Essay on the Law of Descents,* 4th Edition, Chapter 1, page 50. If, however, the heir did obtain possession, that changed the stock of descent, and the sister of the whole blood became his heir. This resulted in the maxim *possessio fratris facit sororem esse haeredem*. The doctrine of seisin was unsatisfactory when applied to future interests, because as long as an interest was future and not possessory, there could be no seisin in the owner. The early English cases, therefore, adopted a doctrine that the last purchaser of a future interest could cast a descent to his heirs. From this arose the situation that as a future interest was not descendible it would not pass to the heirs of the owner, but would pass to the heirs of his grantee who would thereby become a purchaser. That was the situation which existed when *Conner v. Waring* was decided. Discussion of these doctrines will be found in *Tiffany on Real Property,* 3rd

Edition, paragraph 1115, note 7; *Miller on Wills*, paragraph 209, note 5-M, pages 575-576, the case of *Cook v. Hammond*, Fed. Cas. No. 3, 159, 4 Mason 467, decided in 1827 by Mr. Justice Story, and the *Maryland Law Review*, Vol. II, No. 2, pages 101-107. This Court in *Conner v. Waring* held that the intermediate heir, in this case Louisa, could not cast a descent by her will because she had only a beneficial interest, the legal interest being in the trustees. Following this decision came *Jenkins v. Bonsal*, 116 Md. 629, 82 A. 229, decided in 1911. In that case the question was to whom a contingent remainder was distributable. The Court said that a contingent remainder to Thomas Meredith Jenkins was descendible. The fact that it embraced personal property, made no difference in contingent remainders of this class. It was held that the share to which the contingent remainderman would have been entitled had he survived his sister (the contingency specified) was vested in his surviving brothers and sisters, who were his heirs at the date of the death of the life tenant. The question there was whether one-half of the contingent estate passed to the widow of the contingent remainderman on his dying intestate, and the Court decided that as both the contingent remainderman and his widow died before the life tenant, the estate went to the heirs of the life tenant who were in esse at the time of her death.

The case of *Shirk v. Lee,* decided in the Circuit Court of Appeals, 4th Circuit, in 1924, 3 F. 2d 256, 257, construed a Maryland will which took effect in 1865. The Court followed *Conner v. Waring,* supra, although it was attempted to be distinguished, saying, "* * * we see no occasion to differ with the highest court of that state as to a rule of law controlling the descent of real property within it, even if, for the purposes of the argument only, it be assumed that we are at liberty to do so."

In 1908, by Chapter 84 of the Acts of Assembly of that year, it was provided that "all rights and possibilities of reverter shall be subject to be disposed of, trans-

ferred and passed" by will. That provision of the statute
is now Section 332 of Article 93, of Flack's Annotated
Code, 1939. This Act was not, of course, before the
Circuit Court of Appeals in *Shirk v. Lee,* supra, because
the will in question was executed long prior to the en-
actment. This Act permits William James Rucker to de-
vise a possibility of a reverter. Section 1 of Article 46
of Flack's Annotated Code, as enacted by Chapter 325
of the Acts of 1916, provides that lands, tenements and
hereditaments in cases of intestacy shall descend to
those persons who according to the laws of the State,
relating to personal property, would be the distributees
in such cases. This changes the old doctrine of *possessio
fratris.* These statutes abolish the common law rules
held applicable in *Conner v. Waring.* If there is a pos-
sibility of reverter, even in real estate, with which we
are not concerned here, it descends to the heirs. If in
personal property, it descends to the personal representa-
tives. There is no common law of seisin making the
stock. The descent is by the Maryland law of inherit-
ance and distribution. William James Rucker, not as
the intermediate tenant, but as an owner of a possi-
bility of reversion, could convey such interest in the
estate herein by his will.

But in this case, William James Rucker did not have
a possibility of reversion; he had an absolute and inde-
feasible reversion from the time of his mother's death.
There is a distinct difference between the estate con-
sidered in *Conner v. Waring* and Mrs. Dun's estate which
is now before us. In *Conner v. Waring* there was a devise
in trust to Louisa Torrance for her natural life. After the
death of Louisa there was an absolute devise to her chil-
dren. These devises of a life estate in trust and a fee sim-
ple estate over to the children, were good. The void devise
was the clause which provided for a fee simple estate over
to the survivors of the children of the testatrix in the
event of the decease of Louisa without leaving any child
or children or descendants. On this will Judge Alvey, de-
livering the opinion of the Court in *Conner v. Waring,*

said the trustees had the legal fee "but it was a determinable fee, and, consequently, as soon as the death of the equitable life tenant occurred, without having had issue to take the remainder, that event defeated and determined the estate in law conferred upon the trustees, and became thence vested, by way of reverter, in the heirs-at-law of the original donor of the power." In the case before us we have a legal estate vested in the trustee for the life of the son, and then, as to the one-third, for the unmarried life of the widow. These were all the bequests that were good. They could not, in any event, extend beyond the unmarried life of the widow. The estate was not a fee, determinable on the happening of a contingency which might divest the fee simple title of the trustee and put it in other persons as was the case of *Conner v. Waring*. The estates, in the case before us, after the determination of the two life estates, were void *ab initio*, because of the violation of the rule against perpetuities. The trustee, therefore, did not hold a determinable fee, or since we are speaking of personal property, it did not hold an absolute legal estate, subject to be divested. It held absolute legal title to the estate during the two beneficial life estates, after which there was no further valid grant, and therefore, there existed in the heir of the testatrix, from her death, not a possibility of a reverter, but an absolute reversion. The classification of reversions is set out in *Restatement of the Law, Property*, Part I, paragraph 154 e, where it is stated: "Sometimes reversionary interests are indefeasibly vested, as, for example, when A having complete property in a thing, transfers an interest therein, measured in duration by the life of the transferee. Sometimes a reversionary interest is defeasibly vested, as for example, when a transferor who has an estate in fee simple absolute, transfers an estate for life, plus a remainder in fee simple absolute, subject to a condition precedent * * *. Sometimes a reversionary interest is subject to a condition precedent, as for example when the created interests can exhaust the full interest had

by the transferor prior to his transfer, but upon the occurrence of a stipulated event, will sooner end, leaving a balance to be enjoyed by the original transferor. Reversionary interests of the first two types are designated reversions, while reversionary interests of the third type are designated possibilities of reverter." The reversion in the present case is according to the above definitions "indefeasibly vested." We, therefore, have here an absolute estate in the trustee for the duration of the life of the son and for the duration of the unmarried life of the widow, and then an indefeasibly vested reversion in the heir of the testatrix at the time of her death. That is the effect of an intestacy caused by a void bequest. In *Heald v. Heald,* 56 Md. 300, where a limitation over on the death of the children of Charles Heald leaving issue, to such issue, was held void, the Court said: "It follows, therefore, that when one of the children of Charles dies leaving issue surviving, the share of such child does not survive to the remaining brothers or sisters, nor does it go to the issue of such child; but vests at once in the persons and their heirs who were heirs-at-law of the testator at the time of his death." See also *Mines v. Gambrill,* 71 Md. 30, 18 A. 43. In *Graham v. Whitridge,* 99 Md. 248, at page 281, 57 A. 609, at page 614, 58 A. 36, the Court said: "Where an interest or estate is given by deed or will, with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is for the purpose of determining the effect on the prior disposition of the property, to be considered as stricken out, leaving the prior dispostion to operate as if a limitation over had never been made." This quotation was approved in the case of *Turner v. Safe Deposit & Trust Co.,* 148 Md. 371, 129 A. 294. If it is applied to the present case in which the prior limitations were only for life, we have the same situation as if the estate were granted only to the trustee for the life of the son and for the unmarried life of the widow, leaving no granted estate beyond, but a reversion to the heir of the testatrix

at the time of her death, who was her son. This, of course, goes to his personal representatives who are the executors of William J. Rucker.

These executors, who are administering this estate in Virginia, are authorized to appear in these proceedings by the provision of Flack's Annotated Code, 1939, Article 16, Section 147. Courts of Equity have power to make complete distribution, and ordinarily will not direct the estate to be transferred to another Court for that purpose. *Myers v. Forbes,* 74 Md. 355, 22 A. 410; *Wright v. Williams,* 93 Md. 66, 48 A. 397. Jurisdiction will be retained until complete relief is afforded. *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795. And the trustee will ordinarily continue to act until the estate is properly paid over to those to whom it belongs. *Harlan v. Gleason,* 180 Md. 24, 22 A. 2d 579. The situation in this case, however, is somewhat different. William James Rucker was a native of Virginia; his estate is being administered in the Virginia courts, and the distribution of it is to be determined by Virginia law. There may be questions as to the distribution of the interest passing here to his executors, which will have to be determined by Virginia law, although we are not suggesting that there are, in fact, any that need such determination. The trustee, however, will complete its duty here by turning over the estate to the executors. We think, therefore, that the decree should direct this, leaving future questions, if any, to be determined elsewhere.

> *Decree reversed and case remanded for the passage of a new decree in conformity with this opinion. Costs, above and below, to be paid out of the estate.*